UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES, | ) |
| | ) |
| v. | )  Cr. Nos.  05-0359-01, 02, 03 (RMU) |
| | ) |
| DOUGLAS JEMAL, et al. | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF NORMAN D. JEMAL'S
MOTION TO SEVER COUNTS 6-8 BASED UPON
<u>REJUDICIAL JOINDER UNDER RULE 14</u>**

The Court should sever Counts Six through Eight, ¶ 18 of the Manners and Means Section, and ¶¶ 18-20 of the Overt Acts Section of Count One (collectively the "tax evasion counts") from the remaining counts of the indictment on the grounds that severance is necessary under Federal Rule of Criminal Procedure 14 to avoid prejudice to Norman D. Jemal (Mr. Jemal).

**I.      INTRODUCTION**

The Indictment alleges three distinct groups of criminal offenses with nothing in common beyond the identities of the Defendants, Norman D. Jemal, Douglas Jemal, and Blake Esherick (collectively "the defendants"). The public corruption counts, Counts One through Three are the centerpiece of the Indictment. They allege that the Defendants were principals in the Douglas Development Corporation ("DDC), a business that manages, develops and leases commercial real estate owned by Douglas Jemal, Indictment at 1-2 (¶¶ 1-2), and that Michael Lorusso ("Lorusso") was the Deputy Director of the District of Columbia's Office of Property

Management ("OPM"), who was responsible for, among other things, arranging for the leasing of office space by D.C. government agencies. Id. at 3 (¶ 7). All of the public corruption counts are based on the allegation that over an approximately nineteen-month period, between May 2001 and late-2002, Defendants provided several things of value to Lorusso in return for various official acts, primarily related to (a) the District's lease of and subsequent unconsummated effort to purchase a vehicle impound lot at 4800 Addison Road, Capitol Heights, Maryland, and (b) the District's lease of, and payment of invoices related to tenant improvements at, commercial office space in a building at 77 P Street, N.E., Washington, D.C. See Indictment at 5-8 (¶¶ 15-16) (Count One -- Conspiracy to Commit Bribery), 14-15 (Count Two -- Bribery), and 17 (¶ 4) (Count Three -- Mail and Honest Services Fraud).[1]

The wire fraud count, Count Five, alleges that Defendants devised an unrelated scheme to defraud relating to a commercial loan obtained by the entity that owned the 77 P Street property, in which Defendants allegedly submitted false and fraudulent documents to the lender, Morgan Stanley Mortgage Capital ("Morgan Stanley"), to obtain leasing commissions. Indictment at 23-24 (¶¶ 11-12). The wire fraud count alleges that Defendants defrauded Douglas Jemal's business partner and Morgan Stanley by obtaining these leasing commissions from a tenant improvement reserve that was part of the loan, allegedly by misrepresenting that the funds were for an outside broker, MTD Real Estate Services ("MTD"), when in fact MTD was allegedly controlled by Defendants. Id. at 24-26 (¶¶ 13-16). The wire fraud count further contends that the scheme defrauded the IRS because MTD did not file a tax return reporting these leasing commissions as

---

[1] Count Four is based on a small subset of these allegations. Compare Indictment at 7 (¶ 16(e)(i)) with id. at 19-20 (¶¶ 1-3).

income. *Id.* at 27 (¶ 20). These events allegedly took place in less than a month, between November 19, 2002, the date of the loan, and December 16, 2002, the date that Defendants transferred the funds out of the MTD bank account. *Id.* at 22 (¶ 7), 27 (¶ 19). The wire fraud count contains no allegations relating to Lorusso, the District of Columbia government, or any public corruption.

The tax evasion counts, Counts Six through Eight) allege that for each of the tax years 2001, 2002 and 2003, Douglas Jemal and Blake Esherick, **not** Norman Jemal, willfully evaded income taxes by failing to report as income to Esherick: (a) checks from DDC to Esherick's ex-wife, (b) checks from DDC to Esherick directly, (c) rent-free housing at a Bethesda, Maryland home and subsequently a Washington, D.C. home, (d) checks from DDC for an automobile used by Esherick, and (e) payment of certain of Esherick's credit card expenses. Indictment at 28-39 (Counts Six through Eight). Again, the tax evasion counts contain no allegations about Lorusso, the District of Columbia government or any public corruption, nor do they relate in any way to the scheme alleged in the wire fraud count.[2]

---

[2] Although the tax evasion counts contain no allegations regarding public corruption, the conspiracy to commit bribery alleged in Count One includes allegations relating to the tax evasion. Specifically, paragraph 18 of the Manners and Means Section of Count One alleges that Defendants Douglas and Norman Jemal "obtained the services" and "the personal loyalty" of Defendant Esherick, purportedly to induce him to participate in the bribery conspiracy, by engaging in the same conduct alleged in the Tax Evasion Counts to purportedly assist Esherick in the evasion of income taxes. Indictment at 8-10 (¶ 18); *see also* id. at 13 (¶¶ 18-20) (alleging overt acts relating to the tax evasion allegations). These "allegations" are a transparent attempt to avoid severance of the otherwise unrelated and improperly joined public corruption counts and tax evasion counts.

## II.  ARGUMENT

### A.  The Court Should Grant A Severance Under Rule 14 To Prevent Prejudicial Spill-Over Of Evidence

Even if this Court determines that all the counts contained in the indictment were properly joined in a single indictment under Rule 8, this Court should nonetheless grant a severance pursuant to Rule 14 to avoid prejudice to Mr. Jemal.  Under Rule 14, "[i]f the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires."  Fed. R. Crim. P. 14(a).

As the D.C. Circuit has recognized, the danger of prejudice from failure to grant a severance is as follows:

> (1) [the defendant] may become embarrassed or confounded in presenting separate defenses; (2) the jury may use the evidence of one of the crimes charged to infer criminal disposition on the part of the defendant on which is found his guilt of the other crime or crimes charged; or (3) the jury may cumulate the evidence of the various crimes charged and find guilt when, if considered separately, it would not so find.  A less tangible, but perhaps equally persuasive, element of prejudice may reside in a latent hostility engendered by the charging of several crimes as distinct from only one.

*Drew v. United States*, 331 F.2d 85, 88 (D.C. Cir. 1964).  The second and third factors are present here, requiring severance.

First, a joint trial of the tax evasion counts with the public corruption counts and the wire fraud count would prevent Mr. Jemal from receiving a fair trial because the jury is likely to infer criminal disposition on the part of Mr. Jemal as a result of the multiple charges unrelated to him contained in the indictment.  Simply put, if this Court does not sever Mr. Jemal, the jury will

hear a plethora of damaging evidence pertaining to the tax counts but inapplicable to him. Such a scenario significantly improves the likelihood of a conviction of Mr. Jemal, and such irrelevant evidence will only prejudice the jury and impair Mr. Jemal's ability to fairly defend himself against the counts in which he is charged. *See, e.g.*, *United States v. Gray*, No. 104CR580, 2005 WL 1126733, at *4 (N.D. Ohio May 3, 2005) (evidence relating to tax charges not otherwise admissible at trial on non-tax charges "would cause substantial and compelling prejudice to [defendant's] right to a fair trial on the non-tax charges"). The jury's consideration of the evidence regarding the public corruption counts and the wire fraud counts with respect to Mr. Jemal would be unfairly "tainted" by evidence that the government would seek to introduce relating to the tax evasion counts.

Second, the jury cannot reasonably be expected to ignore evidence introduced in support of the tax evasion counts considering the public corruption and wire fraud counts. Thus, the danger exists that the jury may convict Mr. Jemal on the public corruption counts by cumulating evidence introduced in support of the tax evasion counts. *See Gregory v. United States*, 369 F.2d 185, 189 (D.C. Cir. 1966) ("where evidence of more than one crime is offered to the jury because more than one crime is charged in the indictment, the evidence as to all crimes tends to cumulate to prove each, thus prejudicing the defendant in his right to a separate consideration of his guilt or innocence on each charge") (citing *Drew*, 331 F.2d at 91); *United States v. Foutz*, 540 F.2d 733, 738 (4th Cir. 1976) (when one part of the government's case is weaker than another, a court cannot assume that the jury will properly compartmentalize the evidence into "separate intellectual boxes") (quoting *Bruton v. United States*, 391 U.S. 123 (1967) (quotation marks omitted)). In sum, the Court should sever the tax fraud counts from the remaining counts of the indictment under Rule 14 to avoid prejudice to Mr. Jemal.

Finally, the risk that the jury would unfairly cumulate the evidence against Mr. Jemal is heightened in this case by the fact that the evidence supporting the tax evasion counts would not be admissible in a separate trial on the public corruption or the wire fraud counts.  The cross-admissibility of evidence is evaluated under Federal Rule of Evidence 404(b), which provides that "other acts" evidence "is not admissible to prove the character of a person in order to show action in conformity therewith."  Fed. R. Evid. 404(b) (emphasis added); *see also Huddleston v. United States*, 485 U.S. 681, 686 (1988) ("The threshold inquiry a court must make before admitting similar acts evidence under Rule 404(b) is whether that evidence is probative of a material issue other than character.").  Thus, the government may only introduce evidence of other acts when it establishes that the evidence is being offered for specific "purposes such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ."  Fed. R. Evid. 404(b).  The D.C. Circuit "has repeatedly emphasized the narrow scope of the 'bad acts' evidence exceptions under Rule 404(b) . . . and the continuing applicability of the Rule 403 limitation on unduly prejudicial evidence even if an exception is satisfied."  *Nicely*, 922 F.2d at 856 (collecting cases).

Evidence relating to the tax evasion counts would not be admissible at Mr. Jemal's separate trial on the public corruption counts or the wire fraud count under any of the exceptions provided in Rule 404(b).  The alleged tax fraud is completely unrelated to the public corruption counts and the wire fraud count, and therefore, is not probative of intent or knowledge.  *Nicely*, 922 F.2d at 857 ("[W]hen a prior criminal act is relied upon to prove intent or knowledge, similarity between the two events must be shown to establish the threshold requirement of relevance.") (citation and quotation marks omitted); *see also Drew*, 331 F.2d at 93 (finding that facts regarding two robberies "do not show such a close similarity in the manner of committing

Memorandum in Support of Motion to Sever
Page - 6 -

the crimes as would make them admissible in separate trials"). Evidence that would be admissible at a trial on the tax evasion scheme -- for example, tax returns and general ledgers establishing benefits provided to certain Douglas Corp. employees -- has no bearing on Mr. Jemal's motive, opportunity, or plan to provide things of value to Lorusso or to obtain a real estate leasing commission, and therefore, would not be admissible at a separate trial on the public corruption or wire fraud counts.

The government will likely argue that the allegations in paragraph 18 of the Manners and Means Section of Count One -- that Defendants Douglas Jemal and Norman Jemal "obtained the services" and "the personal loyalty" of Defendant Esherick, purportedly to induce him to participate in the bribery conspiracy, by helping him evade taxes, Indictment at 8-10 (¶ 18) -- demonstrate that the conduct alleged in the tax evasion counts provided the motive for the conduct alleged in the Public Corruption Counts. However, the "allegation" in paragraph eighteen is sheer speculation and a transparent attempt to avoid severance. Given that Defendants Douglas Jemal, Norman Jemal and Blake Esherick are all defendants in this case, the government has no ability to prove that the alleged payments to Esherick to help him evade income taxes were made for the purpose of obtaining the personal loyalty and services of Esherick so as to induce him to participate in the alleged bribery scheme. The allegation in paragraph eighteen is nothing more than argument by the government and does not provide this Court with a basis to decline to sever the otherwise completely unrelated tax evasion counts from the public corruption counts and the wire fraud count.

### III. CONCLUSION

For the foregoing reasons, the Court should sever the tax evasion counts from the indictment. Mr. Jemal will be severely prejudiced if this Court declines to do so. The jury will hear evidence of a crime in which he is not charged, and most likely use that unrelated evidence against him. Simply put, without the severance of the tax evasion counts, Mr. Jemal will not be able to fairly defend himself.

Respectfully submitted this _____ day of December, 2005.

                                                    _____
                                                    Stanley M. Brand
                                                    Ross Nabatoff
                                                    The Brand Law Group
                                                    923 Fifteenth Street, N.W.
                                                    Washington, D.C. 20005
                                                    (202) 662-9700
                                                    Counsel for Norman Jemal