UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | Cr. Nos.: 05-0359-01, 02 & 03 (RMU) |
| | : | |
| **DOUGLAS JEMAL, et al.** | : | |
| | : | |
| **Defendants.** | : | |

## MOTION TO QUASH

Defendants Douglas Jemal and Norman D. Jemal, pursuant to Fed.R.Cr.P. 12(b)(3)(C) and 41(h), respectfully request this Court to quash the February 22, 2005 search warrant directed at the Douglas Development Corp. (Douglas Corp.) offices located at 702 H. Street, N.W., Washington, D.C., and to suppress all evidence and fruits thereof obtained pursuant to said warrant (the Douglas warrant). For the Douglas warrant, suppression is the appropriate remedy because: (1) the affidavit purportedly justifying their issuance fails to establish probable case; (2) even if the affidavit contains adequate probable cause validating the warrant's issuance, the command provisions of the warrant exceed any such probable cause; and (3) the warrant lacks the constitutionally-mandated particularity, thereby allowing the government to engage in an improper rummaging of the defendants' business and personal affairs.

The government sought this search warrant despite Douglas Corp's complete cooperation during the grand jury investigation. Indeed, commencing in late 2004, Douglas Corp. produced a voluminous amount of documents to the government. In fact, by early 2005, Douglas Corp. had provided, via seven grand jury subpoenas, over 45,000 pages of material to the government, and was willing to furnish any further documentation that the government believed necessary to its

investigation. Thus, despite knowing that Douglas Corp would supply any documentation that the government requested *i.e.*, exigent circumstances did not exist regarding the availability of documents, the government nevertheless concluded that conducting a search of the Douglas Corp. offices was critical to its investigation.

Consequently, the government drafted an affidavit containing three discrete areas of purported criminal conduct: (1) an alleged bribery scheme involving Michael Lorusso (Lorusso), the deputy director of the District of Columbia's Office of Property Management, supposedly receiving items of value in exchange for his assistance in benefiting Douglas Corp. by causing the District of Columbia to lease space from Douglas Corp and to pay Douglas Corp. invoices; (2) Douglas Jemal's use of MTD Real Estate Services (MTD), a Jemal-owned entity, to obtain a leasing commission of $430,039.38 without his partner's knowledge; and (3) a purported tax evasion scheme involving Mr. Esherick, John Brownell, and Paul Millstein, two Douglas Corp. employees, whereby Douglas Corp would pay various expenses for the benefit of these three individuals but the individuals did not report such payments as taxable income.

Then, based upon the affidavit, the government prepared the Douglas warrant, which contained 11 categories of items to be seized:

    (1)    All documents relating to Michael Lorusso and high-level officials in the DC Government;

    (2)    All documents and records related to all financial affairs of Blake C. Esherick, including but not limited to all records related to his financial relationship with Douglas Development;

    (3)    All documents and records related to all financial affairs of John E. Brownell, including but not limited to all records related to his financial relationship with Douglas development;

    (4)    All documents and records related to all financial affairs of Paul Millstein, including but not limited to all records related to his financial relationship with Douglas development;

(5)   All documents and records relating to MTD Real Estate Services;

(6)   All documents and records relating to 4800 Addison Road;

(7)   All documents and records relating to 77 P. Street;

(8)   All documents and records related to all items of value provided by Douglas Development to persons and entities, not including routine payments for services or materials in the normal course of business;

(9)   All documents and records relating to Rolex watches, trips to Las Vegas in 2001 and 2002, cash withdrawals or third party checks cashes, and limousine records;

(10)  All documents and records in the nature of day planners, calendars, phone directories, address books, receipts, travel related documents and such records which account for the activities of Douglas Jemal, Norman Jemal, and Blake Esherick, including entertainment and travel, from January 1, 2001 to the present; and

(11)  Any collections of photographs which include Lorusso and/or other DC Government public officials.

Also, the warrant permitted the government to seize an entire folder of documents even if the warrant encompassed only one document within that folder, and all computer hardware and software on location.

The problem, however, with the affidavit and the warrant is that they fail to pass constitutional muster. As this Court is well aware, an affidavit underlying a search warrant must establish probable cause, *i.e.*, a fair probability that that evidence of a crime will be found in a particular place. The affidavit underlying the Douglas warrant fails to do so. Regarding the alleged bribery scheme, the affidavit recites verbatim portions of the criminal information to which Lorusso pled guilty and, while Lorusso pled guilty to accepting bribes, conspicuously absent from the criminal information and the affidavit is the critical component of bribery: the *quid pro quo*. Indeed, the affidavit is utterly silent with respect to any *quid pro quo* between

Douglas Corp. and Lorusso, and without probable cause establishing this integral facet of a bribery offense, there can be no probable cause that bribery, in fact, occurred. Moreover, probable cause regarding the $430,039.38 leasing commission is similarly lacking. Creating an entity, MTD, to receive a leasing commission is simply not a crime even if Douglas Corp.'s partner was unaware that MTD was a Jemal-owned entity. The fact that a DC government official had not heard of MTD and stated that MTD did not represent the city with respect to any leasing at 77 P. Street does not establish any probable cause with respect to this transaction. The fact remains that this DC official, whom the affidavit conveniently fails to identify, might simply be unaware that MTD assisted a DC government agency with respect to leasing space at 77 P. Street. The bottom line is that the affidavit fails to establish, pursuant to any evidentiary standard, that MTD did not legitimately earn the commission.

The attempted probable cause for the purported tax evasion scheme is similarly unavailing. The fact that Mr. Esherick, Brownell, and Millstein received benefits from Douglas Corp., which were not reported as taxable income, does not establish probable cause that a tax evasion scheme occurred. Indeed, a variety of legitimate reasons exist for the non-reporting of these benefits including, but not limited to, loans and gifts to the three individuals. Of course, the affidavit ignores these possibilities and simply concludes that the benefits provided to the three individuals constitute reportable income for purposes of the federal tax laws. Yet, such a conclusion is mere speculation and such conjecture fails to constitute probable cause. Probable cause must be based upon facts but, this affidavit is constructed on conjecture, speculation, and suspicion.

Besides lacking probable cause to establish that the three transactions contained in the affidavit constitute crimes, the affidavit also lacks probable cause confirming a nexus between

the place to be searched and the evidence sought.  Regarding the Douglas warrant, the affidavit states only that "it is reasonable to conclude" that the personal financial information of Mr. Esherick, Brownell, and Millstein may be found in Douglas Corp.'s offices.  This statement constitutes pure, unadulterated speculation, and is insufficient to establish the requisite probable cause, especially considering that people, if they maintain such information, usually maintain their personal financial information in locations other than their work place.  Moreover, with respect to the corporate documents identified in the Douglas warrant, the affidavit fails to contain any facts establishing that the corporate documents identified in the Douglas warrant were at the corporate offices.  In this case, while it may be reasonable to assume that corporate documents are maintained at corporate offices, such an assumption lacks substance because over two years elapsed between the time of the transactions specified in the affidavit and the issuance of the warrant.  In any event, because of this two-year time lapse, the affidavit should have contained some facts revealing that documents relating to these old transactions were still maintained at the Douglas Corp. corporate offices.   It did not, and therefore, the affidavit fails to establish the requisite nexus.

      This lapse of time between the transactions identified in the affidavit and the issuance of the search warrant also contributes to the affidavit's lack of probable cause.  In any affidavit underlying a search warrant, the affidavit's facts must be sufficiently related to the time of the warrant's issuance so that probable cause exists at the time of the search and not at some time in the past.  In this case, the affidavit's three transactions occurred no later than 2003, but the magistrate did not issue the warrant until February, 2005.  Thus, two years elapsed between the date of the transactions and the warrant's issuance, and such a lapse of time simply vitiates any probable cause that might have existed at some point in time.  Simply put, the two-year delay in

issuing the search warrant placed the information contained in the affidavit below the probable cause threshold.

This lack of probable cause extends also to the warrant. The scope of any warrant, and the search, is limited by the extent of probable cause contained in the underlying affidavit. The command to search can never exceed the affidavit's probable cause. Yet, in this case, that is the precise scenario that occurred. Regarding the Douglas warrant, the eleven categories of items to be seized exceeds the probable cause contained in the affidavit. Three of the categories (2-4) allowed the government to seize all records relating to the financial affairs of Mr. Esherick, Brownell, and Millstein. Yet, if probable cause existed in the affidavit, such probable cause related to a tax evasion scheme between Douglas Corp. and these three individuals.[1] Consequently, there was absolutely no probable cause to seize all of the financial records of these three individuals, regardless of time and entities. To the contrary, the affidavit's purported probable cause allowed the government to seize only the records of these three individuals related to their financial relationship with Douglas Corp, nothing more and nothing less. Likewise, the category that allowed the government to seize all material related to Michael Lorusso and other high-level officials in the DC government (category 1) exceeds any probable cause found in the affidavit. Again, the bribery allegations relate to Lorusso, and therefore, this category must similarly be limited to Lorusso. It was not, and therefore, it directly contravenes Fourth Amendment jurisprudence requiring search warrants to be limited to the probably cause contained in the underlying affidavit.

---

[1] If this Court concludes that the bribery and MTD allegations constitute probable cause, such a finding does not alter the conclusion that these three categories exceed the affidavit's probable cause. The alleged bribery and MTD schemes fail to provide sufficient probable cause to allow the government to seize all the financial documents of these three individuals, including any records disclosing financial transactions among immediate family. While the warrant allows the seizure of such utterly irrelevant documents, the affidavit's probable cause does not.

Motion to Quash
Page 6

Similarly, the three categories permitting the government to obtain all the records relating to MTD, 4800 Addison Road, and 77 P. Street (categories 5-7) are also facially overbroad. The affidavit details one transaction involving MTD, *i.e.*, the leasing commission, but the warrant demands the seizure all MTD records, regardless of transaction. The affidavit patently lacks any probable cause to justify the seizure of all of the transactions in which MTD was involved. Likewise, the affidavit does not even specifically identify 4800 Addison Road, but the warrant mandates the seizure of all records of that property. Such a command is invalid. There can be no probable cause to seize all of the records relating to 4800 Addison Road when the affidavit fails to identify specifically the property. The same rationale applies to the seizure of all records pertaining to 77 P. Street. There is no specific mention of 77 P. Street in the bribery or the tax evasions sections of the affidavit. The affidavit refers to 77 P. Street only in the MTD leasing commission transaction but the warrant commands the seizure of all 77 P. Street documents. If the affidavit limits 77 P. Street to the leasing commission transaction, the corresponding command section of the warrant must similarly restrict the seizure of documents relating to only that particular aspect of the property.

The final four categories of the Douglas warrant contain the same vice. Category 7 directs the seizure of all of Douglas Corp.'s records relating to any items of value provided to any person or entity, excluding routine vendor payments. Yet, the affidavit lacks any probable cause to justify such a seizure. If the affidavit contains probable cause with respect to the bribery allegations, such probable cause is limited to Douglas Corp.'s dealings with Lorusso, and category 7 should have adhered to this limitation. It did not, instead allowing the government to rummage through all of Douglas Corp.'s records pertaining to gifts given to anyone or any entity. Such a command provision far exceeds the affidavit's probable cause, and consequently

is fatally deficient. The warrant also allowed the government to obtain all records relating to Rolex watches, trips to Las Vegas in 2001-2002, cash withdrawals or third party checks cashed, and limousine records (category 8). Thus, this category allows the government to seize the records of any Douglas Corp. employee who used a limousine at any time, traveled to Las Vegas in 2001 or 2002, withdrew money at any time, or cashed a check for a friend at any time. Yet, if the affidavit establishes probable cause, such probable cause is limited to the giving of items of value to Lorusso, and consequently, this category should been qualified by a connection to Lorusso. It was not, and therefore, is facially overbroad. Category 9 also is deficient. It allows the seizure of all records accounting for the activities of Douglas Jemal, Norman Jemal and Mr. Esherick from January 2001 to the present. Yet, the affidavit does not contain probable cause allowing the government to obtain such documents. To the contrary, the affidavit is limited to three discrete alleged areas of criminal conduct and category 9 should have been restricted to those three transactions. Instead, it exceeds any purported probable cause found in the affidavit by allowing the government to review all of the activities of the Jemals and Mr. Esherick from 2001 to the present. The category allowing the government to seize photographs of Lorusso and other high-level DC government officials is similarly invalid. Again, the affidavit limits any supposed probable cause to alleged bribes to Lorusso, and consequently, the seizure of any photographs must be limited to Lorusso.

The warrant's facial overbreadth, however, is not limited to the fact that its command sections exceed any supposed probable cause contained in the underlying affidavit. It is also facially overbroad because it lacks the particularity that the Constitution requires.[2] The Fourth

---

[2] Overbreadth has two components in Fourth Amendment jurisprudence: (1) lack of probable cause for the breadth of the items to be seized; and (2) insufficient particularity in

Amendment specifically commands that no warrant shall issue except those "particularly describing the . . . things to be seized." U.S. Const., Amend. IV. In this case, the Douglas warrant fails the particularity test. It utilizes generic language such as "all documents and records whatsoever," and fails to restrict the seizure of documents to the allegedly fraudulent transactions identified in the affidavit. In addition, despite the fact that the alleged criminal conduct specified in the affidavit occurred over a specified time period, the warrant is not limited to such time periods. Indeed, in the Douglas warrant, nine of the eleven categories fail to contain any time limitation whatsoever. In addition, of the two remaining categories that identify a time limitation, one of them allows the seizure of records from 2001 to the present despite the fact that the affidavit fails to contain any probable cause establishing, pursuant to any evidentiary standard, that any of the alleged criminal conduct was continuing in nature.

Finally, the warrant's lack of particularity is further confirmed by the complete failure of the warrant to identify any criminal statutes or to refer to any criminal offenses. While the affidavit contains such references, the affidavit was not incorporated into the warrant, and consequently, the warrant stands alone. When standing alone, however, it lacks the particularity to pass constitutional muster, and therefore, this Court must quash the search warrant and suppress all evidence and fruits seized as a result of this warrant. Such a ruling would be consistent with the facts and the law.

---

(continued)
describing the items. *See United States v. Smith*, 424 F.3d 992, 1004 (9th Cir. 2005). The Douglas warrant was deficient in both aspects.

Respectfully submitted this _____ day of December, 2005.

_____
Stanley M. Brand
Ross A. Nabatoff
The Brand Law Group
923 Fifteenth Street, N.W.
Washington, D.C. 20005
(202) 662-9700
Counsel for Norman Jemal

Reid Weingarten
Erik L. Kitchen
Brian M. Heberlig
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036-1795
 (202) 429-3000
Counsel for Douglas Jemal

Michele Roberts
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
(202) 887-4306
Counsel for Douglas Jemal

Christopher B. Mead
London & Mead
1225 19th Street, N.W.
Suite 320
Washington, D.C. 20036
(202) 331-3334
Counsel for Douglas Jemal

Paul Kemp
Carol Elder Bruce
Venable LLP
575 7th Street, N.W.
Washington, D.C. 20004
(202) 344-4400
Counsel for Blake Esherick