UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Crim. No. 05-359-01,-2, -3 (RMU) |
| | : | |
| DOUGLAS JEMAL, et al | : | |

GOVERNMENT'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS COUNTS ONE AND TWO
FOR FAILURE TO STATE AN OFFENSE

The United States, through its attorney, the United States Attorney for the District of

Columbia, respectfully opposes Defendants' Motion to Dismiss Counts One and Two for Failure

to State an Offense ("Motion to Dismiss").  In support of this opposition, the Government

respectfully submits:

I.  THE INDICTMENT PROPERLY CHARGES
BRIBERY AND CONSPIRACY TO COMMIT BRIBERY

A. Introduction

The Indictment properly charges the offenses of bribery and conspiracy to commit

bribery, where the facts demonstrate a series of payments intended to influence a government

official in the performance of a series of official acts.  The law is clear that a corrupt payment can

be made to influence more than one official act, and, to the same end, that a series of such

payments may be made to influence a government official in performing a series of official acts.

The defendants' interpretation of the law contemplates a rigid "one payment for one act" rule.

According to the defendants, if a bribe payor makes two (or more) payments, each intended to

influence multiple acts, but it is not possible to link "a particular thing ... in exchange for any

specific official action," then the defendants simply cannot be prosecuted.  Such an interpretation

of the bribery statute flies in the face of common sense, is inconsistent with the statute, is

inconsistent with case law, has no support from <u>Sun-Diamond</u>,[1] and must be rejected.

B. A Bribery Scheme May Consist of a Course of Conduct
<u>Encompassing Multiple Payments to a Government Official to Influence Multiple Acts</u>

<u>1.  Bribery under 18 U.S.C. Section 201(b)</u>

Title 18, United States Code, Section 201(b), in pertinent part, sets forth the bribery offense as follows:

> (b)    Whoever –
> (1) directly or indirectly, corruptly, gives, offers or promises anything of value to any public official ..., with intent --
>> (A) to influence any official act; or
>> ...
>> (C) to induce such public official ... to do or omit to do any act in violation of the lawful duty of such official ...
> [shall be punished as provided by law].

<u>2. Bribery may be Committed through a Course of Conduct</u>

There are many ways the offense of bribery may be committed.  It may involve a single payment intended to influence a single act, multiple payments intended to influence a single act or – as in this case – a course of conduct encompassing multiple payments intended to influence multiple acts.  "[T]he intended exchange in bribery can be 'this for these' or 'these for these,' not just 'this for that.'" <u>United States v. Jennings</u>, 160 F.3d 1006, 1014  (4th Cir. 1998). Accordingly, "course of conduct" corruption schemes involving multiple payments for multiple acts have been charged under nearly all the federal corruption statutes, including § 201.

For example, in <u>United States v. Campbell</u>, 684 F.2d 141 (D.C. Cir. 1982), defendant was charged in a bribery scheme in which a District of Columbia Superior Court Judge was provided a series of bribes – including such disparate items as "the move of household goods

---

[1]        <u>United States v. Sun-Diamond Growers</u>, 526 U.S. 398 (1999).

-2-

in August 1975 and five payments of cash between January 1976 and February 1977" – from a

moving/hauling company, in exchange for his dismissal of hundreds of traffic tickets that had

been issued against the bribe payor.[2] Id. at 145.  Describing the facts as an "on-going scheme

that covered an extensive period of time," this Circuit affirmed the conviction.  Id. at 149.[3]  See

also, United States v. Leggett, 81 F.3d 220, 222-23 (D.C. Cir. 1996) (bribery scheme between

cleaning contractor and government contracting official charged in a single bribery count:

contractor placed official's girlfriend on payroll at $750 to $800 biweekly "for doing almost

nothing" in exchange for official's ongoing lax enforcement of the terms of the contract); United

States v. Kelley, 36 F.3d 1118 (D.C. Cir. 1994) (numerous acts and payments by payor (a

subcontractor) and numerous acts by government contracting official).[4]

Other federal prosecutions under various of the federal bribery and corruption statutes,

including § 201, have involved a series of payoffs or payments in a "course of conduct" fashion

to contract officials, regulators, or other officials such as meat inspectors, involving multiple

payments for a series of acts.   See, e.g., Jennings, 160 F.3d at 1014 (affirming conviction where

evidence demonstrated a  "course of conduct of favors and gifts flowing to a public official in

---

[2]        In such a case, it would have been impossible to line up a single payment with a
specific dismissed ticket, and it is apparent that the bribe payor's motive was to provide a series
of goods to influence a series of acts.  Presumably this would be fatal to the prosecution under
the defendants' logic.

[3]        Though the conviction was ultimately for the lesser included offense of  gratuities,
the "course of conduct" nature of the charges was accepted without notice.

[4]        The opinion does not discuss in detail the exact set of acts performed by the
government official.  Nonetheless, it is clear from the discussion of the facts that the government
official helped the subcontractor obtain the contract and at one point solicited payments from the
subcontractor by indicating that such payments would need to be made if the subcontractor
sought to be paid.  The bribe scheme was charged in a single count.

exchange for a pattern of official actions favorable to Jennings's companies ... ."); [5] United States

v. Quinn, 359 F.3d 666, 673 (4th Cir. 2004) (same) (quoting Jennings); United States v. Dixon,

658 F.2d 181 (3rd Cir. 1981) (series of payments and numerous acts as part of a scheme to obtain

a government contract through bribes of a legislative aide); [6] United States v. Morales, 11 F.3d

915, 916-18 (9th Cir. 1993) (government official's receipt of bribes from various sources, and in

different amounts in 1989 and 1990 charged in single bribery count); [7] United States v. Arshad,

239 F.3d 276, 279 (2d Cir. 2001) (affirming "more than one bribe" enhancement in sentencing

defendant, a painting contractor, on a single count alleging a violation of the bribery provisions

of 18 U.S.C. § 666: "'[T]he six payments made by [the painting contractor] to the [government]

inspector were intended for the accomplishment of more than [] one action[:] one, approval of

his deficient painting work by the painting inspector; two, authorization for more work hours by

the painting inspect[or]; three, expediting a building superintendent's approval for [the painting

contractor's] payment ....'" (quoting the district court's findings at sentencing; brackets in

opinion)), cert. denied, 533 U.S. 910 (2001); United States v. Gubelman, 571 F.2d 1252 (2d Cir.

1978) (payments to meat inspector by meat packing companies of $20 to $25 per week), cert.

---

[5]    Though Jennings involved a conviction under the bribery provisions of 18 U.S.C. § 666, the Fourth Circuit specifically indicated it was interpreting those provisions as meeting the elements of 18 U.S.C. § 201.

[6]    The opinion notes there was but a single bribery count. United States v. Dixon, 658 F.2d at 183.

[7]    The Indictment charged that the bribes were paid to the public official by the payor "in return for being influenced to commit, aid in committing, collude in or allow and make opportunities for the commission of frauds on the United States, that is, among other things, setting up sham corporations designed to assist [the payor] in evading the payment of taxes; ... ." United States v. Morales at 918.

denied, 436 U.S. 948 (1978);  United States v. Benedetto, 571 F.2d 1246 (2d. Cir. 1978) (same).[8]

     Moreover, in light of the substantial overlap between bribery and Hobbs Act "extortion under color of official right,"[9] it is noteworthy that the Hobbs Act has similarly been interpreted as covering "course of conduct" bribery schemes encompassing multiple payments for multiple acts.  United States v. Forszt, 655 F.2d 101, 104 (7th Cir. 1981) ("Hobbs Act extortion is also a continuing offense so that no statute of limitations problem exists where, as here, there is a single continuous plan of extortion embracing multiple payments over a period of years."); United States v. Aliperti, 867 F.Supp. 142, 147 (E.D.N.Y. 1994) ("[W]here the Indictment alleges that the defendants engaged in a single, continuous plan of extortion envisioning multiple payments over several years from certain named companies, Congress would have intended that the offense be treated as a continuing one.").[10]

---

[8]    The only issues on appeal in Gubelman and Benedetto were evidentiary issues and the respective Indictments were not described in detail.  In context, however, it is plain that a series of bribes involving weekly payments to the meat inspectors were charged in but a few counts.  The defendant in Gubelman was described as "on the 'take.'"  Gubelman, 571 F.2d at 1255.  It is also clear that the counts were organized by bribe payor, with multiple payments included for multiple acts.  For example, the Second Circuit in Benedetto described a course of conduct spanning many years charged in four bribery counts, discussed the testimony of the officers of the four meat-packing companies, and discussed the 404(b) evidence associated with the testimony of the officers of meat-packing plants not charged in the Indictment.  See Benedetto, 571 F.2d  at 1247.

[9]    In the Seventh Circuit, "extortion 'under color of official right' equals the knowing receipt of bribes; they need not be solicited." United States v. Holzer, 840 F.2d 1343, 1351 (7th Cir.) (citation and internal quotes omitted), cert. denied, 486 U.S. 1035 (1988).

[10]    In United States v. Provenzano, 334 F.2d 678 (3rd Cir.), cert. denied, 379 U.S. 947 (1964), the extortion scheme encompassed 73 checks and other cash payments from the payor to the government official, charged in a single count.  The Third Circuit rejected the requirement that it was necessary to charge each payment in separate counts:

    [Appellant] seems to contend that each separate payment made by

Finally, even in Travel Act and other racketeering prosecutions, the federal courts have recognized "course of conduct" bribe schemes as a common feature of state law. See, e.g., United States v. Goodman, 945 F.2d 125, 127 (6th Cir. 1991) (Travel Act and "payola" conviction involving multiple payments to radio station personnel to "add" records to the station's playlist: "[T]here were multiple payments for multiple 'adds,' and the evidence does not support precise compartmentalization. The events were thus linked together in a continuing scheme."); United States v. Baggett, 481 F.2d 114, 115 (4th Cir.), cert. denied, 414 U.S. 1116 (1973) (Travel Act course of conduct).[11]

Thus, consistent with the interpretation of nearly every body of law which applies to

[the payor] should have been alleged as completing a separate offense which should have been set up as an individual count in a multi-count indictment, each count requiring proof by the Government of every element of the Hobbs Act offense, including the instilling of fear of economic harm and the payment of money because of that fear. This position, if adhered to by this court or by the court below, would have rendered the indictment in the instant case inoperative and would have entitled [appellant] to a judgment of acquittal.

Id. at 684.

[11]     In Baggett, the scheme was described as follows:

The Government's evidence did not show a specific quid pro quo from Baggett to Rocks in return for the $3500 check. It did show a course of conduct of favors and gifts flowing from Rocks to Baggett. These included trips to Florida [,] ... a check made to cash, ... [and] receipt by Baggett of favors from others who had received favorable zoning rulings. After one such ruling, a man in the construction business built an addition to Baggett's house, while another in the paving business paved a road on Baggett's farm. Baggett was billed for neither and paid for neither.

Id. at 115.

"payment"-type corruption offenses, bribery statutes – in this case § 201 – prohibit a course of conduct scheme encompassing a series of payments for series of acts. This is especially true where the bribe payor provides a series of things of value to the government official in circumstances which reveal an "on-going scheme that covered an extensive period of time," United States v. Campbell, supra, where the evidence "shows a course of conduct of favors and gifts flowing to a public official in exchange for a pattern of official actions favorable to the donor," United States v. Jennings, supra, and where, as one Circuit has noted, "precise compartmentalization" is impossible. United States v. Goodman, supra.

### C. The Fourth Circuit in Jennings Provides Clear Principles in Applying the Bribery Statute to a "Course of Conduct" Scheme

In United States v. Jennings, supra, the Fourth Circuit set forth a clear set of legal principles for applying the bribery statute to a course of conduct. In Jennings, the court applied § 201 principles in sustaining a § 666 bribery conviction based on evidence of a housing contractor's (Jennings) cash payments to a Baltimore housing official (Morris) -- "gifts made with the corrupt intent to induce Morris [the housing official] to engage in, or to reward him for engaging in, official actions on behalf of Jennings's companies." Jennings, 160 F.3d at 1018. Although the payments from Jennings to Morris occurred close in time to the official acts by Morris, there was no precise linkage between the several payments and the several official acts. Nonetheless, the Fourth Circuit affirmed the convictions. In doing so, the Fourth Circuit used layman's language to describe the "course of conduct:"

> Even if the evidence did not necessarily link each of Jennings's payments to a specific official act by Morris, a reasonable juror could still conclude that Jennings paid bribes. Over a fairly short period Morris approved over $650,000 worth of contracts for

> Jennings's companies, and Jennings paid Morris over $7,000 in
> cash. Again, a reasonable juror could have concluded that there
> was a course of conduct involving payments flowing from Jennings
> to Morris in exchange for a pattern of official actions favorable to
> Jennings's companies, and that was sufficient to convict Jennings
> of bribery.

Id. at 1018.  The Fourth Circuit applied settled legal principles associated with the interpretation

of the 18 U.S.C. § 201 to describe the intent element that must be established in such a course of

conduct scheme:

> [T]he government need not show that the defendant intended for
> his payments to be tied to specific official acts (or omissions).
> Bribery requires the intent to effect an exchange of money (or gifts)
> for specific official action (or inaction), but each payment need not
> be correlated with a specific official act. See [United States v.
> Arthur, 544 F.2d 730, 734 (4th Cir. 1976).]  Rather, it is sufficient
> to show that the payor intended for each payment to induce the
> official to adopt a specific course of action.  See id.  In other
> words, the intended exchange in bribery can be "this for these" or
> "these for these," not just "this for that." Further, it is not necessary
> for the government to prove that the payor intended to induce the
> official to perform a set number of official acts in return for the
> payments.  The quid pro quo requirement is satisfied so long as the
> evidence shows a "course of conduct of favors and gifts flowing to
> a public official in exchange for a pattern of official actions
> favorable to the donor." Id. (internal quotation omitted). Thus, all
> that must be shown is that payments were made with the intent of
> securing a specific type of official action or favor in return.  For
> example, payments may be made with the intent to retain the
> official's services on an "as needed" basis, so that whenever the
> opportunity presents itself the official will take specific action on
> the payor's behalf. See id.  This sort of "I'll scratch your back if you
> scratch mine" arrangement constitutes bribery because the payor
> made payments with the intent to exchange them for specific
> official action.

Id. at 1014 (emphasis in original). Thus, the Fourth Circuit in Jennings recognized the

Government's need to prove corrupt intent, recognized the traditional concept of a quid pro quo,

and, accordingly, found the offense of bribery to have been committed when "payments were made with the intent of securing a specific <u>type</u> of official action or favor in return." <u>Id</u>. This case applied settled principles of bribery law in a straight-forward fashion to a "these for these" bribery offense.

D. The Court's Opinion in <u>Sun-Diamond</u> Did Not Impact
<u>Jennings or Alter Settled Bribery Law</u>

In <u>United States v. Sun-Diamond Growers</u>, 526 U.S. 398 (1999) ("<u>Sun-Diamond</u>"), the Supreme Court reviewed gratuities convictions involving gifts provided by an agricultural business to the Secretary of Agriculture, whose official duties included, at some level, certain regulatory oversight of the business. The Indictment failed to allege a nexus between the gratuities and any official acts. At trial, consistent with its pre-trial rulings as to the sufficiency of the Indictment, the district court instructed the jury that "'[i]t is sufficient if Sun-Diamond provided [the Secretary of Agriculture] with unauthorized compensation simply because he held public office,'" and that "'[t]he government need not prove that the alleged gratuity was linked to a specific or identifiable official act or any act at all.'" <u>Sun-Diamond</u> at 403. The only issue before the Court was the connection that had to be alleged and proved in a gratuities prosecution between the thing of value given to the government official and any official act performed or to be performed.

Though the Court had before it a review of a gratuities conviction (and not a bribery conviction), the Court briefly discussed the intent required for the gratuities offense, and distinguished it from the "corrupt" intent required to commit the offense of bribery. The sum total of the Court's discussion of the intent element associated with the offense of bribery – an

-9-

issue not before it – consisted of two sentences:

> The distinguishing feature of each crime is its intent element.
> [1] Bribery requires intent "to influence" an official act or "to be
> influenced" in an official act, while illegal gratuity requires only
> that the gratuity be given or accepted "for or because of" an official
> act. [2] In other words, for bribery there must be a <u>quid pro quo</u> -- a
> specific intent to give or receive something of value <u>in exchange</u>
> for an official act. An illegal gratuity, on the other hand, may
> constitute merely a reward for some future act that the public
> official will take (and may already have determined to take), or for
> a past act that he has already taken.

<u>Sun-Diamond</u>, 526 U.S. at 404-05 (bracketed numbers added).  Nothing about <u>Sun-Diamond</u>

suggests the Court, by these two sentences, intended to alter well-understood interpretations of

the bribery statutes.  Indeed, no issue regarding the interpretation of the intent required for a

bribery convictions was before the Court.

The Court's actual holding was narrow and focused exclusively on the intent required to

support a gratuities conviction:

> We hold that, in order to establish a violation of 18 U.S.C.
> 201(c)(1)(A) [the gratuity statute], the Government must prove a
> link between a thing of value conferred upon a public official and a
> specific "official act" for or because of which it was given.

<u>Sun-Diamond</u>, 526 U.S. at 414.  In short, the Court's opinion in <u>Sun-Diamond</u> did not address or

purport to alter settled bribery law.

E.  <u>Jennings</u> Is Consistent with <u>Sun-Diamond</u>
and Has Been Further Endorsed by
<u>the Fourth Circuit in Quinn</u>

In that the Court in <u>Sun-Diamond</u> did not purport or attempt to alter settled bribery law,

there is no reason to conclude that any part of its opinion impacted the Fourth Circuit's analysis

in <u>Jennings</u> of the intent required for a course of conduct bribery scheme.  Indeed, the Second

-10-

Circuit flatly declared that Sun-Diamond "says nothing about bribery, especially with regard to how the term 'corruptly' should be interpreted." United States v. Alfisi, 308 F.3d 144, 151 fn. 4 (2nd Cir. 2002).[12]

Further, any suggestion that Sun-Diamond altered the bribery landscape was put to rest by the decision of the Fourth Circuit in United States v. Quinn, 359 F.3d 666 (4th Cir. 2004), decided subsequent to Sun-Diamond. In Quinn, the Fourth Circuit had before it an appeal of § 201 bribery convictions. Even in light of Sun-Diamond, the Court of Appeals in Quinn soundly and unambiguously reaffirmed the core principles of Jennings, particularly that it was not necessary to establish that bribe payments be "tied to specific acts:"

> We have stated that the government is not required in a bribery case to prove "an expressed intention (or agreement) to engage in a quid pro quo." [United States v. Jennings, 160 F.3d at 1014.]. Nor must the government prove "that the defendant intended for his payments to be tied to specific official acts (or omissions).... Rather, it is sufficient to show that the payor intended for each payment to induce the official to adopt a specific course of action." Id. In other words, "[t]he quid pro quo requirement is satisfied so long as the evidence shows a course of conduct of favors and gifts flowing to a public official in exchange for a pattern of official actions favorable to the donor." Id.

---

[12]     To provide context, the Second Circuit in Alfisi stated:

> We do not agree that Sun-Diamond requires us to define the crime of bribery narrowly. ... As we understand Sun-Diamond, the offense of paying unlawful gratuity should not be broadly construed because there are other laws and regulations specifically dealing with the problem of public officials receiving unlawful gratuities. 526 U.S. at 409-12, 119 S.Ct. 1402. Sun-Diamond, however, says nothing about bribery, especially with regard to how the term "corruptly" should be interpreted.

Alfisi, 308 F.3d at 151, n.4 (emphasis in original).

<u>Quinn</u> at 673.  Accordingly, <u>Quinn</u>, <u>Jennings</u>, and the established body of federal corruption law

well-support charging a "course of conduct" bribe scheme, involving a series of bribe payments

to influence a series of acts.

<u>F.  The Indictment Tracks Settled Case Law</u>

Consistent with the above law, the Indictment properly charges bribery.  Count Two of

the Indictment charges, in full:

**COUNT TWO**
(Bribery)

From between in or about May 2001 and December 2002, in the District of
Columbia and elsewhere, defendants DOUGLAS JEMAL, NORMAN D. JEMAL
and BLAKE C. ESHERICK, as principles, aiders and abetters and coconspirators,
did corruptly, give, offer and promise Michael A. Lorusso, a public official of the
District of Columbia, things of value, as set forth in the following table:

|     | DATE | THING OF VALUE |
| --- | --- | --- |
| a.  | In or about May 2001 | Hotel accommodations at the Bellagio Hotel, Las Vegas, Nevada; |
| b.  | In or about August 2001 | Cash; |
| c.  | In or about late August 2001 | Rolex men's wrist watch; |
| d.  | In or about September or October 2001 | Cash; |
| e.  | In or about October 2001 | Repairs to Lorusso's Audi automobile; |
| f.  | In or about February 2002 | Trip to Florida; |
| g.  | In or about May 2002 | Air travel, hotels, and several meals in Las Vegas; |
| h.  | In or about May 2002 | Cowboy boots; |

-12-

|  | DATE | THING OF VALUE |
|---|---|---|
| i. | Numerous dates in 2001 and 2002 | Meals and entertainment, specifically including meals at the Capital Grille, Zola's and other District of Columbia restaurants, and tickets to events at the MCI Center; |
| j. | Various unknown dates | Use of Douglas Development's limousine service for local travel in the District of Columbia area; |
| k. | Unknown date in 2002 | Offer of a custom-made suit; |

to influence official acts of Michael A. Lorusso and to induce Michael A. Lorusso to do and to omit to do acts in violation of Michael A. Lorusso's official duties, so that when the opportunity presented itself, Lorusso would take actions on defendant DOUGLAS JEMAL's and Douglas Development's behalf, to include:

    i)    actions in the nature of causing the DC Government to enter into leases of property owned in whole or in part by defendant DOUGLAS JEMAL;

    ii)    actions in the nature of causing the DC Government to attempt to purchase property owned by defendants DOUGLAS JEMAL and NORMAN D. JEMAL;

    iii)    actions in the nature of causing the DC Government to pay invoices submitted for payment by Douglas Development, including invoices which were false, fraudulent, unsupported, duplicate or excessive;

    iv)    actions in the nature of causing DC Government funds to be used to pay for financial obligations of Douglas Development; and

    v)    numerous routine actions involving the exercise of discretion in connection with the DC Government's relationship with Douglas Development.

The Indictment tracks the statutory language and alleges that the defendants "did corruptly, give, offer and promise Michael A. Lorusso, a public official of the District of Columbia, things of value ... to influence official acts of Michael A. Lorusso and to induce Michael A. Lorusso to do and to omit to do acts in violation of Michael A. Lorusso's official duties."  The Indictment provides ample notice to the defendants of the essential core criminal

-13-

conduct that is being alleged.  In connection with the other detail in the Indictment, and the discovery in this case (consisting of documents, the bulk of which came from the defendants), the defendants are on ample notice of the charges.

Indeed, the allegations properly set forth in the Indictment are strikingly similar to those of Jennings.  The bribe scheme charged in this case involves  payments of a series of items by a company in the real estate business to a government official in the "property" business, where the official took many official acts of value to the company over time.  Thus, consistent with the principles of Jennings and Quinn, and the substantial body of case law supporting the charging of "course of conduct" corruption schemes, the Indictment alleges a "these for these" bribery scheme, that is, a scheme involving a "course of conduct of favors and gifts flowing to the public official in exchange for a pattern of official actions," and payments made to influence the official in his performance of duties on an "as needed" basis.

### G.  The Defendants' Legal Arguments Are Fundamentally Flawed

The defendants argue the Indictment fails to allege a specific quid pro quo.  They appear by this assertion to be making several different arguments.

First, the defendants rely on Sun-Diamond and insist that there is insufficient linkage between the items allegedly given to Lorusso and the specific acts Lorusso performed.  As noted above, the Fourth Circuit in Quinn and Jennings has made it clear that such precise linkage is not required and the Second Circuit in Alfisi has rejected any notion that Sun-Diamond impacted settled bribery law.

Moreover, the defendants' interpretation of Sun-Diamond is simply strained.  In this regard, the defendants commence their legal argument by noting that the Sun-Diamond Court

-14-

stated bribery requires "a specific intent to give or receive something of value in exchange for an official act," Defendants' Motion at 3 (quoting Sun-Diamond at 404). It cannot seriously be maintained, however, that the Court by that phrase intended that the bribery laws were henceforth to apply only when a payment was intended to influence an "official act" (singular) and not "official acts" (plural). Nothing whatsoever in Sun-Diamond provides a basis to conclude that the Court, in making passing reference to the bribery statute as part of its interpretation of the gratuities laws, was attempting to establish a sweeping "one and only one bribe for one and only one act" rule, and that the bribery statute was no longer to apply, for example, to a person who intended to improperly influence a government official to commit multiple acts by means of a single bribe,[13] or, as in this case, multiple acts by means of multiple bribes. This issue was not before the Court in the gratuities context, let alone the bribery context.[14] As noted by the Second Circuit, a better reading is that Sun-Dimond left the bribery statute untouched.[15]

---

[13]     See United States v. Edwards, 324 F.Supp.2d 10, 11 (D.D.C. 2004) (one bribe for three acts specified in the Indictment: "[I]n exchange for the $10,000, the defendant [1] agreed not to recommend that Keystone be barred from contracting with the District of Columbia, [2] guaranteed approval of Keystone's work permit, and [3] ensured that Keystone could do its job free from regulatory interference." (bracketed numbers added)). Presumably, this could not have been charged under the defendants' reading of Sun-Diamond.

[14]     The Court did not have before it a "course of conduct" prosecution involving multiple "gratuities" for "multiple acts." Rather, it had before the review of a conviction where it was alleged that certain gifts constituted gratuities even though it was proven they were linked to no official acts whatsoever. The Court certainly did not hold that a bribery offense could not be committed by such a course of conduct.

[15]     The defendants also take out of all possible relevant context the Court's comment in Sun-Diamond that "a statute in this field that can linguistically be interpreted to be either a meat axe or a scalpel should reasonably be taken to be the latter." Defendants' Motion at 9-10 (citing Sun-Diamond at 412.). This Court noted the numerous ways payments to and receipts of gifts by government employees are governed by rule or regulation. Accordingly, the "meat axe"/"scalpel" metaphor was used to suggest that the Court should not adopt a broad

Furthermore, the defendants' attempts to imbue the bribery statute with their "specific payment for specific act" requirement would result in profound and perverse consequences. The bribery laws as interpreted by the defendants could be easily confounded by the simple strategy of providing the Government official an abundance of things of value to influence many acts, in a fashion so as to render impossible the ability to line up any item of value with a single specific official act. For example, assume the following conversation occurred between an employee of a real estate management company and a government official involved in the government's real estate matters:

| | |
|---|---|
| Employee A. | Here is a thing of value. There is more where that came from. |
| Official | Great. Thanks. |
| Employee A. | This is to induce you to engage in official acts on our behalf. Let there be no mistake, I am corruptly, giving, offering and promising things of value to you with intent to influence official acts and to induce you to do or omit to do acts in the performance of your official duties. I want you to consider yourself on our payroll – you are officially deemed "on the take." |
| Official A. | But which official duties? |
| Employee | Your duties encompass a host of matters which impact our business. Your job is to make us money; that is why we are paying you. Just take actions on our behalf when the |

interpretation of the gratuities statute which would, in effect, trample the entire regulatory landscape. This language has nothing to do with the bribery statute, which, if anything, should be construed broadly.

The defendants also juxtapose the Fourth Circuit's language in <u>Jennings</u> involving the interpretation of the bribery statute with the <u>holding</u> of <u>Sun-Diamond</u>. <u>Defendants' Motion</u> at 9. However, the holding of <u>Sun-Diamond</u> involved solely an interpretation of the intent required to violate the gratuities statute. This comparison has no real value.

The defendants make reference to <u>Sun-Diamond</u>'s "comprehensive statutory analysis." <u>Defendants' Motion</u> at 8. However, the only statute comprehensively analyzed was the gratuities statute, and even that for a narrow issue.

opportunity presents itself.[16]  Take actions in the nature of: i) causing the government to enter into leases of property with us; or ii)  causing the government to attempt to purchase property from us; or iii) causing the government to pay invoices submitted for payment by us, including invoices which are false, fraudulent, unsupported, duplicate or excessive; iv) causing government funds to be used to pay for our financial obligations; and v) taking routine actions involving the exercise of discretion in matters which impact us.[17]

Official A.    Anything else?

Employee.    Of course.  I contemplate an ongoing scheme consisting of many things of value and many acts.  I contemplate a course of conduct involving payments flowing from our company to you in exchange for a pattern of official actions favorable to our company.  You scratch our back and we'll scratch yours.

Official A.    Isn't this illegal?

Employee.    Not at all.  Unless the Government can prove we "gave any <u>particular</u> thing of value to [you] in exchange for any <u>specific</u> official action," no law has been broken.[18]

As extreme as the conversation may be, it fairly captures the substance of the defendants' argument and exposes its flaws.  Such an interpretation of the bribery laws would undermine their very purpose.  <u>See</u>, <u>e.g.</u>, <u>United States v. Anderson</u>, 509 F.2d 312, 333 (D.C. Cir. 1974) ("Congress has decided that bribery and kindred practices imperil the very nature of democratic government. It has legislated a vigorous attack on those practices."), <u>cert. denied</u>, 420 U.S. 991 (1975).  Such an interpretation cannot have been intended by Congress and it strains <u>Sun-Diamond</u> beyond all recognition to conclude this interpretation was intended by the Supreme

---

[16]    <u>Jennings</u>,160 F.3d at 1014;  Indictment at 14.

[17]    Indictment at 14-15.

[18]    <u>Defendants' Motion</u> at 2 (emphasis supplied).

Court.  In short, defendants' interpretation of <u>Sun-Diamond</u> is simply wrong.[19]

The defendants' claim that the Indictment does not allege a "quid pro quo" may be interpreted as an allegation that the Indictment is defective because it does not allege that the government official, Lorusso, took official actions in response to the specific items that were given.  Of course, Lorusso's intent or conduct is legally irrelevant to the defendants' culpability.[20] The only intent that is important and which must be alleged in the Indictment is the intent of the defendants, and the Indictment squarely charges that the defendants acted with the requisite corrupt intent to influence Lorusso in the performance of his official duties.

The defendants further claim that the quid pro quo is not established because Count Two "fails to allege any specific official acts that fall within [certain] general categories." <u>Defendants'</u> <u>Motion</u> at 2.  We maintain that the Indictment, read as a whole, provides ample notice of the acts which were sought to be procured by the defendants and sufficiently specifies the conduct sought to be influenced.

Finally, the defendants argue there can be no bribe scheme because some of the items of value were provided subsequent to some of the acts allegedly performed by Lorusso.  This argument is particularly meritless.  <u>See, e.g.</u>, <u>United States v. Gatling</u>, 96 F.3d 1511, 1522  (D.C.

---

[19]    There is no requirement that the <u>defendants</u>' intent must be proved through direct evidence or that it must be proved that the defendants had specific discussions with Lorusso in which a bribe deal was hatched.  The Government may, of course,  prove the defendants' intent by circumstantial evidence.

[20]    Thus, it would not matter if Lorusso: 1) would have undertaken the same course of conduct but for the bribes; 2) had the mistaken belief that what the defendants corruptly intended as  bribes were simply gifts; 3) took acts which benefitted the city, or 4) received the payments without actually being influenced or induced in any way.  Indeed, Count Two does not allege that Lorusso in fact did anything because of the bribes or that the bribes were successful in accomplishing their intended goals.

Cir. 1996) (quoting Campbell, 684 F.2d at 148 ("[I]t is only logical that in certain situations the bribe will not actually be conveyed until the act is done."); Jennings, 160 F.3d at 1014 (same, quoting Campbell).  Moreover, payments to an official which may constitute a "reward" (or the consummated bribe payment) for a past act may reasonably be intended by the payor and construed by the recipient as constituting the "bribe" or inducement for the future.  It is reasonable to infer that sequential payments, once they start flowing, effectively communicate the briber's intent to the recipient that additional payments will be forthcoming if further actions are taken on the behalf of the payors.  In this way, one bribe begets another, as the payment of one bribe – either prior to or after an official act – has the natural effect of inducing further conduct by the official favorable to the payor.  This understanding of human nature was well-stated in United States v. Shaffer, 183 F.3d 833, 841 (D.C. Cir. 1999), vacated as moot, 240 F.3d 35 (D.C.Cir 2001):  "[B]ribery typically involves an intent to affect the future actions of a public official through giving something of value, and receipt of that thing of value then motivates the official act."  Indeed, it is hard to imagine intelligent men in business or government not attaching such a meaning to a series of valuable items given to a government official intertwined temporally with acts by the official for the giver's benefit.[21]  Certainly, a jury would be permitted (even if not required) to draw such an inference.

    More to the point, despite the occasional language in the cases which describes bribery as forward-looking, numerous bribe schemes involve agreements whereby the governmental official undertakes acts of benefit to the payor, and then the bribe is paid in the form of a share of the

---

    [21]    In affirming the conviction in Jennings, the Fourth Circuit noted:  "It is simply implausible that Jennings continued to pay Morris with no intent to induce him to continue awarding contracts at favorable prices."  Id. at 1023.

proceeds, long after the official acts which generated revenues.  See, e.g., United States v. Leggett, supra (bribery in the form of series of payments to contracting official's girlfriend intertwined with contractor's conduct of lax enforcement); United States v. Johnson, 964 F.2d 124, 126 (2nd Cir. 1992) (bribery in the form of a kickback scheme); United States v. Umans, 368 F.2d 725, 730 (2nd Cir. 1966) (bribe payments to tax official subsequent to the acts being completed), cert. dism., 389 U.S. 80 (1967);  United States v. Jackson, 876 F.Supp. 1208, 1212-13 (D.Kan.1994) (bribes in the form of kickbacks in a patient referral scheme paid by hospital to a postal employee; payments made after the referrals).

### H.  The Conspiracy Count States an Offense

For reasons set forth above, Count One, which charges the defendants with conspiracy to commit the offense of bribery, likewise properly alleges a crime.  Indeed, conspiracy, by its nature contemplates a course of conduct.  So long as the Government can prove an agreement to commit the offense of bribery plus an overt act to effectuate the agreement (with the requisite intent), the Count may be proven.  The Indictment sufficiently charges the agreement, describes the essence of the conspiratorial understanding, and charges numerous overt acts.

### I.  Conclusion

Thus, contrary to the defendants' assertions, the Indictment in this case squarely tracks the statute and sets forth a charging theory and charging language which comports with and is supported by relevant and applicable case law.  The Indictment provides clear and sufficient notice to the defendants of the charges that they face.  Counts One and Two properly state offenses and should not be dismissed.

WHEREFORE, we request Defendants' <u>Motion to Dismiss</u> be denied.

RESPECTFULLY SUBMITTED,


KENNETH L. WAINSTEIN
DC Bar No. 451058.
UNITED STATES ATTORNEY

By:     _____

MARK H. DUBESTER
ASSISTANT UNITED STATES ATTORNEY
DC Bar No. 339655
555 Fourth Street, N.W., Room 5917
Washington, D.C.  20530
Ph. (202) 514-7986

-21-

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have caused to be sent by fax or by electronic means a copy of the attached pleading, to:

Michele Roberts, Esq.                    Paul Kemp, Esq.
Counsel for Douglas Jemal                Carol Elder Bruce
Akin Gump                                Counsel for Blake C. Esherick
1333 New Hampshire Avenue, NW            Venable LLP
Washington, DC 20036                     One Church Street,
                                         Rockville, MD    20850

Reid Weingarten, Esq.
Brian M. Heberlig                        Stan Brand, Esq.
Counsel for Douglas Jemal                Counsel for Norman D. Jemal
Steptoe and Johnson                      923 15th Street, NW
1330 Connecticut Avenue, N.W.            Washington, DC   20005
Washington, D.C.  20036-1795

Christopher Mead, Esq.
Counsel for Douglas Jemal
London & Meade
1225 19th Street, NW, Suite 320
Washington, DC  20036

this _____ day of January, 2006.

_____
Mark H. Dubester
Assistant United States Attorney
DC Bar No. 339655
555 Fourth Street, NW
Rm. 5917
Washington, DC 20001
(202) 514-7986

-22-