UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | Crim. No. 05-359-01, -2, -3 (RMU) |
| | : | |
| **DOUGLAS JEMAL, et al** | : | |

GOVERNMENT'S OPPOSITION TO
DEFENDANTS' MOTION TO STRIKE SURPLUSAGE

The United States, through its attorney, the United States Attorney for the District of Columbia, respectfully opposes Defendants' Motion to Strike Surplusage. In support of this opposition, the Government respectfully submits:

I. THE INDICTMENT DOES NOT CONTAIN PREJUDICIAL SURPLUSAGE

A. Introduction

The Indictment in this case, like many indictments in white collar cases, contains an abundance of factual detail. Although an Indictment would be sufficient if it were to allege little more than the statutory definition of the offense, such an Indictment would provide little notice to the defendants of the charges.

The defendants in this case have complained about specific aspects of the Indictment being "surplusage" of the sort which should be stricken. For the most part, they complain about such phrases as: "including," "among others," "and others known and unknown." For the reasons set forth below, the defendants' motion as it relates to these terms should be denied.

The defendants also complain about certain charging language in the conspiracy count and certain corresponding overt acts. The Government agrees to strike overt acts 18 through 20. The Government maintains the remaining language in the conspiracy count is proper and should not be struck as surplusage.

B. Legal Principles

"[A] motion to strike surplusage [from the indictment] should be granted only if it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial." United States v. Rezaq, 134 F.3d 1121, 1134 (D.C. Cir.1998)(citation omitted).  "[T]he standard under Rule 7(d) has been strictly construed against striking surplusage."  United States v. Jordan, 626 F.2d 928, 930 n.1 (D.C.Cir. 1980).  See also, United States v. Oakar, 111 F.3d 146, 157 (D.C. Cir. 1997) (" The scope of a district court's discretion to strike material from an indictment is narrow[.]" (citing to United States v. Jordan, id.)).  By way of illustration, district courts have struck as surplusage the mention of an unnecessary alias, see, e .g., United States v. Hsia, 24 F.Supp.2d 14, 24-25 (D.D.C. 1998), rev'd on other grounds, 176 F.3d 517 (D.C. Cir. 1999), or the references to Iran's support for terrorism in a prosecution of criminal export violations.  United States v. Quinn, — F.Supp.2d ----, 2005 WL 3148231 at *14-15  (D.D.C. 2005).

C.  Phrases Such as "Including," "Among Others" and
Similar Terms Should Not Be Struck as Surplusage.

The defendants seek to strike as surplusage terms such as  "including," "among others," and similar phrases.  We submit these terms are properly included in the Indictment.  They are not inflammatory or prejudicial and, contrary to the defendants' claims, do not imply the existence of uncharged misconduct.  In light of the narrow grounds upon which this Court may properly strike potions of the Indictment as surplusage, we submit the defendants' motion should be denied.

We note that the district judges in this District have not been consistent in deciding this issue.  Compare United States v. Hsia, 24 F.Supp.2d at 27 (Friedman, J.) (not striking such

language), United States v. Cisneros, 26 F.Supp.2d 24, 54-55 (D.D.C. 1998) (Sporkin, J.) (not striking); United States v. Watt, 911 F. Supp. 538, 554 (D.D.C. 1995) (Lamberth, J.) (not striking); United States v. North, Crim. No. 88-00880-02, 1988 WL 148493, at *1 (D.D.C. November 8, 1988) (Gesell, J.) (not striking), with United States v. Espy, 989 F.Supp. 17, 34-35 (D.D.C. 1997) (Urbina, J.) (striking); United States v. Poindexter, 725 F. Supp. 13 (D.D.C. 1989) (Harold Greene, J.) (striking); United States v. Hubbard, 464 F. Supp. 64, 82 (D.D.C. 1979) (Richey, J.) (striking).

For several reasons, we submit that the better practice is not to strike such language absent a showing of the sort of specific and concrete prejudice that is not found in this Indictment. We note that the Court of Appeals decided Rezaq and Oakar subsequent to Espy and Poindexter, and it is fair to read those cases as stressing anew the principles that a district judge should exercise restraint in striking language from an indictment and that striking surplusage is disfavored. In addition, we submit that the analysis of Judge Friedman in Hsia is compelling. In Hsia, Judge Friedman rejected the motion to strike the phrase "among others" and "and elsewhere" from the introductory statement listing the overt acts:

> Ms. Hsia argues that these phrases accuse her "of criminal acts in addition to those explicitly charged in the substantive counts." ... The Court disagrees. These phrases do not accuse Ms. Hsia of additional criminal acts; at most, they suggest that there were additional overt acts some of which, in and of themselves, may have been innocent. ... The government need not identify all overt acts in furtherance of a conspiracy in the indictment, and these phrases ensure that the government can, if necessary, prove additional overt acts at trial. ... In addition, since it is sufficient if at least one overt act has been committed in the District of Columbia and only eight in fact were committed here, ... there is no conceivable prejudice in indicating that others may have occurred elsewhere. Accordingly, these phrases will not be stricken.

United States v. Hsia, 14 F. Supp. 2d at 27-28.  See also, United States v. Watt, 911 F.Supp at 555 (accepting Government's characterization that the complained of terms "set[] forth relevant and material evidence illustrative of the means by which the defendant committed the offenses charged" and finding no showing of either prejudice or immateriality); United States v. North, supra ("Words such as 'among other things," 'in part,' or 'including' are not prejudicial or inflammatory but merely designed to provide some reasonable leeway as the proof develops."). Although every indictment is different, we submit that the above analyses are generally applicable to the factual issues raised by the defendants in seeking to strike the specified language from this Indictment.

Finally, terms such as "including" or "among others" are innocuous and not inflammatory.  The notion that such terms would actually be understood by a juror as insinuating the defendants committed other uncharged criminal acts is – we submit – not a fair reading of the Indictment.  As discussed below, such language in some instances properly allows for additional unspecified acts in furtherance of the charged crimes without implying the existence of other uncharged crimes; in other instances the language suggests that persons other than the defendants committed acts; and, in other instances the language is truly innocuous and simply not capable of supporting the claims of prejudice.  We address the specific claims of surplusage advanced by the defendants in turn, as so specified in their Motion.

     A.    Count One

         1.    "and other known and known to the grand jury."  (Page 4 ¶13).

This phrase properly provides notice there were other conspirators.  It does not suggest uncharged misconduct by the named defendants.  The identify of unindicted

coconspirators has been provided to the defendants. This is properly charged and provides the defendants with proper notice of a potential theory of criminal liability.

        2.      "among others" (page 5, Manners and Means)

This phrase properly indicates that the Indictment is setting forth the essence of the conspiratorial scheme but is not attempting to provide every detail. This does not suggest uncharged misconduct.

        3.      "including" (Page 5 ¶15),

This is an innocuous phrase which indicates that the Indictment is setting forth numerous of the items provided by the defendants to Lorusso, but is not attempting to list every such item. Additional items have been identified in the government's letter responding to the defendants' request for a bill of particulars.

        4.      "providing other items of value not specified above" (Page 6 ¶15(l));

Again, this phrase makes clear there were other items of value provided to Lorusso in addition to the items specified in the Indictment. These have been identified in the government's letter responding to the defendants' request for a bill of particulars.

        5.      "among other" (Page 6 (¶ 16))

This phrase precedes the list of acts of Lorusso. However, the acts or lack of acts by <u>Lorusso</u> in no way suggests additional misconduct on the part of the <u>defendants</u>. This language makes clear that the Indictment is setting forth examples of <u>Lorusso's</u> conduct which the defendants sought to influence, but further makes clear that the Indictment does not purport to specify or account for everything that Lorusso did which may have been

sought of influenced by the defendants. The Government, in its letter responding to the defendants' request for a bill of particulars, identified other acts that Lorusso took to benefit the defendants, including, for example, communicating with representatives of Morgan Stanley to assist in Douglas Jemal obtaining the $67 million loan in 2002.

      6.    "including the following" (Page 7 (¶ 16(e))

This is an innocuous phrase which indicates that the Indictment is setting forth the several false, fraudulent and excessive invoices.

      7.    "otherwise taking steps to benefit Douglas Development in connection with the numerous routine issues involving and relating to the DC Government's leasing of space through Douglas Develoment" (Page 8 ¶ 16(g))

Again, this refers to acts by Lorusso. It cannot be read as suggesting other uncharged misconduct by the <u>defendants</u>. Moreover, this phrase accurately speaks to the fact that Lorusso had discretion in handling a host of routine issues necessitating day to day interactions, and that by paying him bribes, the defendants sought to influence him in dealing with such matters. It is not surplusage, let alone irrelevant and prejudicial.

      8.    "among others" (Page 10, Overt Acts)

The Indictment is not required to list all the overt acts. This phrase simply makes clear that the Indictment sets forth some, but not all, of the overt acts.[1]

---

[1] This was the precise issue in <u>Hsia</u>, <u>supra</u> in text.

B.  Count Two.

    1.  "to include" (Page 15)

This phrase precedes reference to acts by Lorusso which were sought to be influenced by the defendants. Again, the acts by Lorusso, or lack of acts by Lorusso, in no way suggests additional misconduct <u>by the defendants</u>. This language makes clear that the Indictment is setting forth the essence of Lorusso's conduct which was sought to be influenced by the defendants (and which in fact benefitted the defendants).

    2.  "numerous routine actions involving the exercise of discretion in connection with the DC Government's relationship with Douglas Develoment" (Page 15 (¶ (v)).

Again, this language accurately speaks to the fact that Lorusso had discretion in handling a host of routine issues necessitating day to day interactions, and that by paying him bribes, the defendants sought to influence him in dealing with such matters. It is not surplusage, let alone irrelevant and prejudicial.

C.  Count Six

    1. "and others" (Page 29 (¶6))

This language does not suggest uncharged misconduct by defendants Douglas Jemal and Esherick – the only two individuals charged in the Count. It does contemplate that there may be other participants and appropriately puts the charged defendants on notice that they may have vicarious liability for actions by other participants.

D.  Counts Seven

    1.  "and others (Page 32 (¶ 3))

See response to "C." above.

E.     Count Eight

1.     "and others" (Page 36 ¶ 3)).

See response to "C." above.

Thus, consistent with the law as set forth in <u>Rezaq</u>, <u>Oakar</u> and <u>Jordan</u>, and consistent with the approach of the district judges in <u>Hsia</u> and <u>Watt</u> in applying the law to similar facts, we submit there are no grounds to strike as surplusage the various items listed in the first section of the defendants' <u>Motion</u> related to terms they characterize is suggesting uncharged misconduct.

### D. The Allegations in the Conspiracy Count Regarding the Compensation of Esherick are not Surplusage

The defendants request that the allegations related to Esherick's compensation set forth at pages 8 - 10, Manners and Means ¶¶ 17-18, and the corresponding overt acts (Page 13, ¶¶ 18-20) be struck.

However, for reasons set forth in the Government's <u>Opposition</u> to the defendants' severance motions,[2] the allegations regarding the financial relationship between Esherick and Douglas Jemal and Norman D. Jemal are properly included as part of a conspiracy offense.

Moreover, it is hardly surprising that a conspiratorial agreement to commit one offense – bribery in this case – may have as a part an agreement to commit other related offenses as well. <u>See</u>, e.g., <u>United States v. Whitehorn</u>, 710 F.Supp. 803 (D.D.C. 1989) ("manners and means" portion of count charging conspiracy to blow up buildings includes allegations concerning false

---

[2]     <u>See</u> <u>Government's Consolidated Opposition to 1) Defendants' Motion to Sever Counts Based on Improper Joinder under Rule 8(b) and Prejudicial Joinder under Rule 14; and 2) Norman D. Jemal's Motion to Sever Counts 6-8 upon Prejudicial Joinder under Rule 14</u> at 10-12. This pleading is described in generic terms in the text.

-8-

identification documents and other uncharged offenses).  In the same vein, in United States v. Patterson, 895 F.2d 1495 (9th Cir. 1987), a murder was properly charged as part of a drug distribution conspiracy count:

> The indictment in this case charged the defendants, including Patterson, with conspiracy to sell heroin. The indictment alleged that the defendants used 'force, fear and intimidation to insure [sic] discipline among its members, and to maintain and expand its heroin distribution areas.'  The indictment also alleged, as an overt act, that Patterson shot Campbell.

United States v. Patterson, 895 F.2d at 1504-05.[3]  As the Government noted in its Opposition to the defendants' severance motions, if the evidence were to have been that Douglas Jemal rewarded and motivated Esherick by means of substantial commissions, cash, or bonuses, or other forms reported to the Internal Revenue Service, this too would be properly part of the conspiracy – akin to splitting the proceeds though in the context of an ongoing business concern.  But what is present instead is a tax evasion scheme.

Finally, there is little prejudice from this allegation since the very language tracks the charged tax crimes set forth in Counts Six through Eight.  Nonetheless, to assure that the jury verdict is necessarily unanimous on an overt act directly linked to the object of the conspiracy the Government agrees to strike paragraphs 18 through 20 of the overt acts.

---

[3]     See also, United States v. Kincaide, 145 F.3d 771, 783 (6th Cir. 1998) (drug conspiracy count charged that defendant and other members of the conspiracy "'would and did obtain false and identification and fraudulent vehicle registrations to avoid detection by law enforcement,' and that 'various members of this conspiracy ... would enforce the goals of the conspiracy through threats of violence and intimidation.'"); United States v. Johnson, 1998 WL 808009 at *3 (9th Cir. November 18, 1998) ("As in Patterson [supra, in text], the indictment in this case alleged that the defendants used force, fear, intimidation, and violence to protect their narcotics sales from rival narcotics traffickers. The indictment also described shootings and gunfire with other narcotics traffickers as among the overt acts of the conspiracy.").

WHEREFORE, we request the defendants' Motions to Strike Surplusage be DENIED.

                RESPECTFULLY SUBMITTED,

                KENNETH L. WAINSTEIN
                DC Bar No. 451058.
                UNITED STATES ATTORNEY

By: _____
                MARK H. DUBESTER
                ASSISTANT UNITED STATES ATTORNEY
                DC Bar No. 339655
                555 Fourth Street, N.W., Room 5917
                Washington, D.C.  20530
                Ph. (202) 514-7986

CERTIFICATE OF SERVICE

      I hereby certify that I have caused to be sent by fax or by electronic means a copy of the attached pleading, to:

Michele Roberts, Esq.  
Counsel for Douglas Jemal  
Akin Gump  
1333 New Hampshire Avenue, NW  
Washington, DC 20036

Paul Kemp, Esq.  
Carol Elder Bruce  
Counsel for Blake C. Esherick  
Venable LLP  
One Church Street,  
Rockville, MD   20850

Reid Weingarten, Esq.  
Brian M. Heberlig  
Counsel for Douglas Jemal  
Steptoe and Johnson  
1330 Connecticut Avenue, N.W.  
Washington, D.C.  20036-1795

Stan Brand, Esq.  
Counsel for Norman D. Jemal  
923 15th Street, NW  
Washington, DC   20005

Christopher Mead, Esq.  
Counsel for Douglas Jemal  
London & Meade  
1225 19th Street, NW, Suite 320  
Washington, DC  20036

this _____ day of January, 2006.

_____  
Mark H. Dubester  
Assistant United States Attorney  
DC Bar No. 339655  
555 Fourth Street, NW  
Rm. 5917  
Washington, DC 20001  
(202) 514-7986