UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES, | ) ) ) | |
| v. | ) ) | Cr. Nos.  05-0359-01, 02, 03 (RMU) |
| DOUGLAS JEMAL, et al. | ) ) ) | |
| Defendants. | ) ) | |

**NORMAN D. JEMAL'S REPLY TO THE GOVERNMENT'S
OPPOSITION TO HIS MOTION TO SEVER BASED UPON
PREJUDICIAL JOINDER UNDER RULE 14**

### A. INTRODUCTION

Defendant, Norman D. Jemal, respectfully submits this response to the government's opposition to his motion, pursuant to Fed.R.Cr.P. 14, to sever counts Six through Eight, ¶ 18 of the Manners and Means Section, and ¶¶ 18-20 of the Overt Acts Section of Count One (collectively the "tax evasion counts") from the remaining counts of the indictment.  Mr. Jemal, who is not charged in the tax counts, asserted that, even if the eight counts of the indictment were properly joined pursuant to Fed.R.Cr.P. 8(b), severance of the tax evasion counts was critical to ensuring him a fair trial.  A joint trial of the tax evasion counts with the public corruption counts would deprive Mr. Jemal of his constitutionally-mandated right to a fair trial because the jury would receive prejudicial tax evidence that would be unrelated and inadmissible against Mr. Jemal, and the distinct likelihood would exist that, based upon the introduction of such inadmissible, inflammatory evidence, the jury would convict Mr. Jemal.  Since such a scenario

would violate Mr. Jemal's constitutional right to a fair trial, he requested that this Court exercise its discretion pursuant to Fed.R.Cr.P. 14 and sever the tax evasion counts.[1]

The government contends, however, that severance of the tax counts pursuant to Fed.R.Cr.P. 14 is inappropriate because: (1) the tax evidence "would be relevant and admissible in a trial on each of the Eight counts [;]" and (2) this Court can remedy any prejudice inuring to Mr. Jemal by providing curative instructions to the jury. Government's Response, pp. 18-21. The government's theory that the evidence underpinning the tax counts would be admissible in the trial on the other counts is premised upon the alleged existence of "substantial interrelationships and overlapping proof among the eight counts." Government's Response, p. 18. Indeed, according to the government, each of the indictment's eight counts revolves around Douglas Jemal's supposed scheme "to work his way out of financial pressures arising from his highly speculative and risky investment at 77 P. Street, N.W." Government's Response, p. 2. Regarding the remedy of curative instructions, the government, after citing a litany of cases, asserts that the defendants have failed "to make the case that curative instructions will be insufficient to address their concerns or that the drastic remedy of severance is therefore required." Government's Response, pp. 19-20.

The government's arguments lack merit. There is little—if any—support for the government's theory that the indictment contains a "tightly related set of charges involving . . . the efforts of Douglas Jemal, through Norman Jemal and Blake Esherick to generate revenues by first leasing and then refinancing the Douglas Jemal's building at 77 P. Street in 2001 and 2002." Government's Opposition, p. 1. In fact, the indictment fails to allege any such scheme. The

---

[1] Alternatively, this Court could sever Mr. Jemal. If Mr. Jemal were tried separately, the tax evidence would surely be irrelevant in his trial.

Reply to the Government's Opposition to Motion to Sever
Page 2

indictment contains: (1) a single-objective conspiracy count (bribery) involving various properties, including 77 P Street, and payments to Douglas Development Corp. via allegedly fraudulent invoices; (2) three substantive counts related to the bribery allegations (bribery, mail fraud, and fraud in the first degree); (3) a wire fraud count bearing no relationship whatsoever to the bribery allegations and involving a completely different alleged victim; and (4) three tax evasion counts where the revenue on which the tax was evaded did not result from the criminal activity charged in the non-tax counts.[2] The indictment does not support the government's theory of a grand fraudulent scheme involving 77 P. Street, and consequently, without such a connection, this Court should exercise its discretion and sever the tax counts. Such a ruling would preserve Mr. Jemal's right to a fair trial.

      Furthermore, contrary to the government's assertion, curative instructions will not remedy the prejudice that will inure to Mr. Jemal if this Court declines to sever the tax counts. The tax counts constitute almost forty percent of the indictment, and the evidence relating to these counts will comprise a significant part of the trial. Thus, the jury will be exposed to a voluminous amount of prejudicial documentary and testimonial evidence that it cannot consider, as a matter of law, when determining Mr. Jemal's innocence or guilt as to the non-tax counts. Yet, the jury will not be that discerning. By listening to and reviewing such evidence over such an extended time period, the jury will be prejudiced against Mr. Jemal, and no curative instruction will alter that result. Thus, the only remedy to ensure a fair trial for Mr. Jemal is to sever the tax counts. By severing these counts, this Court will compel the government to prove

---

[2]     In a majority of federal criminal cases involving purported fraudulent schemes, the government almost always charges an overarching conspiracy containing multiple objectives. In this case, it did not, and its failing to do so only confirms that the government cannot link the eight counts in the indictment by simply concocting a new, uncharged scheme.

Reply to the Government's Opposition to Motion to Sever
Page 3

the elements of the non-tax counts beyond a reasonable doubt, and bar the government from convicting Mr. Jemal based upon irrelevant, inadmissible evidence pertaining to uncharged counts.

## B. ANALYSIS

### 1. EVIDENCE RELATING TO THE TAX COUNTS IS INADMISSIBLE AGAINST MR. JEMAL IN A TRIAL ON THE NON-TAX COUNTS

The government's argument that severance is not warranted under Fed.R.Cr.P. 14(b) hinges upon its theory that the indictment details a fraud scheme involving "efforts by the three defendants to generate revenues and profits from 77 P. Street."[3]  Government's Opposition, p. 8. Based upon the existence of this purported overarching scheme, "there are substantial interrelationships and overlapping proof among the eight counts" and, because of this overlap in proof, evidence concerning the tax counts would be admissible in the trial of the non-tax counts. Therefore, Mr. Jemal would not incur any prejudice in a joint trial of the tax and non-tax counts, and consequently, this Court should decline to sever the tax counts pursuant to Fed.R.Cr.P. 14.

The indictment fails to support the government's premise.  It does not allege some grandiose fraud scheme pertaining to 77 P. Street.  Rather, the indictment details a conspiracy with one simple objective, *i.e.*, the defendants agreed to bribe a D.C. government employee in order to enrich themselves, three substantive counts relating to the bribery, one count bearing no relationship whatsoever to the bribery and involving a different purported victim, and three tax evasion counts not implicating, in any fashion, any revenue generated from the non-tax counts. In simple terms, while the government needs an overarching fraudulent scheme to avoid

---

[3]     The government utilizes the same argument in its claim that there is no misjoinder under Fed.R.Cr.P. 8(b).

Reply to the Government's Opposition to Motion to Sever
Page 4

severance pursuant to Fed.R.Cr.P. 14, the indictment fails to deliver one.[4]  Thus, contrary to the government's assertion, the tax evidence would be inadmissible against Mr. Jemal in a trial of the non-tax counts, and therefore, if this Court declines to sever the tax counts, Mr. Jemal will, in fact, incur prejudice.[5]  The prejudice will consist of the jury receiving a multitude of testimonial and documentary evidence pertaining to the tax counts when, in fact, Mr. Jemal is not charged in those counts.  The jury's repeated exposure to such inflammatory evidence will taint Mr. Jemal before the jury and deprive him of a fair trial.  *See Zafiro v. United States*, 506 U.S. 534, 538 (1993) (district courts should grant severance under Rule 14 when "evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant").

Furthermore, the government's attempt to concoct this alleged fraudulent scheme by inserting ¶ 18 of the Manner and Means Section of Count One in the indictment is unavailing.  According to ¶ 18, Defendants Douglas and Norman Jemal "obtained the services" and "the personal loyalty" of Defendant Esherick, purportedly to induce him to participate in the bribery conspiracy, by engaging in a tax evasion scheme with Mr. Esherick.  Yet, Norman Jemal is not charged in the tax counts.  Additionally, the government will be unable to prove this allegation with respect to any of the defendants.  This allegation simply constitutes the government's effort

---

[4]  The government argues that this Court would permit it, in a trial of the non-tax counts, to introduce evidence of the financial rewards (the alleged tax evasion scheme) that the Jemals allegedly bestowed upon Esherick for his participation in the alleged bribery scheme. Government's Opposition, p. 9.  The purported reward, however, was the compensation Esherick received, not the alleged underreporting of his income.

[5]  The government also tries to link the tax charges to the bribery allegations by asserting that "courts are uniform in recognizing that allegations concerning the financial understandings of members of a conspiracy with each other and payments among the conspirators are appropriate components of an overall conspiratorial agreement." Government Opposition, p. 10.  Such allegations might be "appropriate components of an overall conspiratorial agreement" but, in this case, they are not.  The conspiracy simply does not allege such a scenario.

Reply to the Government's Opposition to Motion to Sever
Page 5

to link the tax charges to the bribery counts, thereby increasing the likelihood of the defendants' convictions based upon unrelated charges. Indeed, the fact that the conspiracy count fails to contain tax evasion as one of its objectives illustrates ¶18's improper purpose. If a fraud scheme related to 77 P. Street existed, including tax evasion, the conspiracy count would have contained tax evasion as one of the illegal objectives. It did not, and the omission of this objective confirms that the government included ¶ 18 in an attempt to avoid misjoinder and severance.

Realizing that its argument that the tax-count evidence would be admissible in the trial of the non-tax counts is tenuous at best, the government resorts to arguing that such tax evidence would be admissible pursuant to Fed.R.Evid. 404(b).[6] According to the government:

> "the jury is entitled to conclude that if Esherick had criminal intent in using false documents to advance false claims on a governmental entity, it is more likely than not that he had such criminal intent involving false documents to advance false claims on a governmental entity in another context."

Government Opposition, p. 13. Yet, Fed.R.Evid. 404(b) bars the use of evidence in precisely the fashion the government intends to utilize it in this case. In its own words, the government intends to use the tax evidence as bad character or propensity evidence. It intends to try to convict the defendants by arguing that if they falsified documents in one arena, they mush have falsified documents in another arena. Such a use of evidence is expressly forbidden, and therefore, the tax evidence simply fails to constitute valid 404(b) evidence especially with respect to Mr. Jemal, who is not charged in those counts. *See United States v. Morrow*, 2005 U.S. Dist. LEXIS 23512 at 8-18 (D.D.C. April 7, 2005).[7]

---

[6]    Since Mr. Jemal is not charged in the tax counts, the only path for admissibility of the tax evidence, at least with respect to him, is Fed.R.Evid. 404(b)

[7]    With respect to Mr. Jemal, the probative value of the tax evidence is significantly outweighed by its prejudicial impact. Assuming that this Court concludes that the tax evidence is legitimate 404(b) evidence, it still should exclude it. *United States v. Miller*, 895 F.2d 1431, 1435 (D.C.Cir.1990) (two-part test to determine admissibility of 404(b) evidence: (1) evidence is

## 2. CURATIVE INSTRUCTIONS WILL NOT REMEDY THE IRREPARABLE HARM MR. JEMAL WILL INCUR IN A TRIAL ON ALL THE COUNTS

A trial of the tax counts and the non-tax counts will irreparably harm Mr. Jemal. The tax counts comprise almost forty percent of the indictment's counts, and the testimonial and documentary evidence relating to these counts will also make up a great part of the trial. Thus, the jury will hear and review a multitude of evidence that, as a matter of law, it cannot apply to Mr. Jemal, but the jury's repeated exposure to such inflammatory evidence, notwithstanding any curative instructions, will irreparably harm Mr. Jemal. Considering the amount of tax-related evidence that the government intends to introduce at this trial, the jury will be simply unable to compartmentalize the tax evidence from the non-tax counts, and will consider such evidence when determining Mr. Jemal's fate. In this case, this Court cannot rely upon curative instructions to avoid the irreparable prejudice that Mr. Jemal will suffer if the tax and the non-tax counts are tried together. The only remedy is severance pursuant to Fed.R.Cr.P. 14. Such a decision would ensure that Mr. Jemal receives a fair trial.[8]

---

(continued)
probative of an issue other than character; and (2) if relevant, the court should bar the evidence if its prejudicial value outweighs its probative value).

[8]   Evidence pertaining to tax evasion is highly prejudicial as evidenced by this Court's repeated holdings that tax counts should be joined with non-tax counts only when the revenue on which the tax was evaded resulted from the conduct alleged in the non-tax counts. *See United States v. Singh*, 973 F.Supp. 7, 18 (D.D.C 1997); *United States v. Treadwell*, 566 F.Supp. 80, 86-87 (D.D.C.1983). The government attempts to avoid this doctrine by relying upon *United States v. Turoff*, 853 F.2d 1037 (2d. Cir.1988) but, according to *United States v. Biaggi*, 909 F.2d 662 (2d Cir.1990), "*Turoff* recognized the propriety of joining tax counts to non-tax counts in multi-defendant cases where the revenue on which the tax evaded resulted from the criminal conduct charged in the non-tax counts." *Biaggi*, 909 F.2d at 676 (Wedtech extortion income formed core of tax count so no severance necessary, even though tax count included small amount of income from other sources).

Reply to the Government's Opposition to Motion to Sever
Page 7

### III. CONCLUSION

Wherefore, for the foregoing reasons, defendant, Norman D. Jemal, requests that this Court sever the tax counts from the indictment. Such a decision would be consistent with the facts and the law, and would also guarantee him a fair trial.

Respectfully submitted this ____ day of January, 2006.

_____
Stanley M. Brand
Ross A. Nabatoff
The Brand Law Group
923 Fifteenth Street, N.W.
Washington, D.C. 20005
(202) 662-9700
Counsel for Norman Jemal