UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **UNITED STATES** | ) ) ) | |
| v. | ) ) | Crim. No. 05-359-1, -2, -3 (RMU) |
| **DOUGLAS JEMAL,** *et al.*, | ) ) ) | |
| **Defendants.** | ) ) | |

### DEFENDANTS' OPPOSITION TO THE GOVERNMENT'S MOTION *IN LIMINE* TO PRECLUDE DEFENDANTS FROM MOUNTING CLAIM OF RIGHT DEFENSE TO FRAUD CHARGES

In a typical criminal case, the Defendant tries to exclude or minimize prosecution evidence about the harms suffered by victims. In a telling indication of the weakness of its fraud case, the government has filed a motion asking the Court "to preclude the defendants from seeking to introduce that no person or entity was harmed by the alleged frauds . . . ."[1] The government's motion is wholly without merit. The government has proposed jury instructions acknowledging its burden to prove the Defendants' "desire or purpose to bring about some gain or benefit to [themselves] or some other person or by a desire or a purpose to cause some loss to some person or entity." See, e.g., Government's Proposed Jury Instruction No. 4.6. That no "person or entity" suffered any damage is obviously relevant to the Defendants' intent, and to the materiality of any alleged misrepresentations.

The government cites cases for the proposition that a defendant cannot use fraud as self-help in collecting a debt that he would not otherwise recover. If that is the government's

---

[1] Government's Motion *In Limine* to Preclude Defendants from Mounting Claim-of-Right Defense to Fraud Charges ("Gov't Motion") at 1.

concern, its motion is unnecessary. The defense contends that every invoice submitted by Douglas Development Corporation ("DDC") was done in good faith, without fraudulent intent, and with the belief that DDC should and would be paid. Defendants will not contend at trial that it was permissible to submit a fraudulent invoice on one transaction because the D.C. Government owed DDC money from a different transaction.

**I.     ARGUMENT**

The government's motion principally relies on United States v. Gole, 158 F.3d 166, 168-69 (2d Cir. 1998), for the proposition that "a defendant may not argue that he should not be convicted for a fraudulent scheme because the money he sought to obtain through fraud was legitimately owed to him." Gov't Mot. at 1. That sentence overstates the holding in Gole; comparing Gole to other Second Circuit cases not cited by the government illustrates the limits of the government's argument.

Defendant Gole was a retired New York City firefighter. He received disability payments from the New York City Fire Department Pension Fund ("the Fund"). The Fund calculated limits on outside income ("the Safeguard Amount") for disabled firefighters according to a complicated formula. The firefighters union disputed the way the Fund calculated the Safeguard Amount. Gole intentionally understated his outside income on forms submitted to the Fund. At trial, Gole admitted that he lied on the forms in order to keep his outside income under the Safeguard Amount, but claimed that he believed the Fund had improperly calculated the Safeguard Amount, and believed he was legally entitled to the benefits he collected. The trial judge instructed the jury that it was not a defense that Gole thought the Safeguard amount was improperly calculated. The Second Circuit found that instruction proper in the circumstances, and affirmed Gole's conviction.

By contrast, the Second Circuit reversed the conviction of another disabled firefighter in United States v. Rossomando, 144 F.3d 197 (2d Cir. 1998).  Rossomando admitted that he knowingly understated his outside income, but contended that he had been in a hurry to complete the forms, and, "based on his mistaken understanding of the applicable Safeguard Limitation -- allegedly obtained from speaking to union personnel and other Fire Department employees -- he believed that his outside earnings did not even approach, much less exceed, the level at which the Pension Fund would be entitled to reimbursement."  144 F.3d at 198.

The trial judge gave a good faith instruction, but qualified it as follows:

> In considering whether or not the defendant acted in good faith, you are instructed that a belief by the defendant, if such a belief existed, that ultimately everything would work out so that no one would lose any money does not require a finding by you that he acted in good faith.  No amount of honest belief on the part of the defendant that the scheme would not ultimately result in a financial loss to the New York City Fire Department or its Pension Fund will excuse fraudulent actions or false representations by him to obtain money, provided, of course, that the government proves beyond a reasonable doubt that the defendant acted with the specific intent to defraud.

Id. at 199 (emphasis omitted).

The Second Circuit reversed Rossomando's conviction, holding:  "We conclude that the Court's initial charge posed a genuine risk of confusing the jury into believing that it would be proper to convict Rossomando of mail fraud without finding that that he contemplated harm to the Pension Fund . . . ."  Id. at 200-201 (citing United States v. Starr, 816 F.2d 94, 98 (2d Cir. 1987) ("Only a showing of intended harm will satisfy the element of fraudulent intent.")).

As the Rossomando and Starr cases illustrate, knowingly submitting an inaccurate claim for payment is not enough, standing alone, for criminal liability under the mail and wire fraud statutes.  A common sense example illustrates the dangers of the government's sweeping

language.  Suppose a lawyer represents a corporate client in two separate litigation matters, and the client requires the lawyer to segregate his hours and submit separate bills for each of the two matters.  The lawyer's secretary prepares a bill for the first matter, but on the heading mistakenly says that the bill is for the second matter.  The lawyer notices the mistake, but is in a hurry to get the bill out, and believes the hours charged are legitimate and he is entitled to payment.  The lawyer mails the bill to the general counsel's office.

Under the theory of the government's motion *in limine*, the lawyer has knowingly submitted a false statement to obtain money.  The lawyer is not a felon, not just because the knowingly false statement was immaterial, but because the lawyer did not have fraudulent intent -- he did not intend to harm the company or obtain money that he was not entitled to receive.  He thought the invoice should and would be paid, regardless of any inaccuracies.  But the government in this case apparently would not allow the lawyer to introduce evidence that he thought he was entitled to payment, and would argue that the jury should be told that such a good faith belief was not a defense.

On the other hand, if the lawyer believed that the company owed him $5,000 from a previous bill that the general counsel disputed based on poor performance, the lawyer could not make up a false bill for $5,000 with fictional hours and submit it for payment.  That is the self-help fraud that the mail and wire fraud statutes forbid.  Defendants will not present such a "set-off" defense.

The additional cases cited by the government are entirely consistent with this distinction.  Indeed, the second case cited by the government, United States v. Vitillo, No. CR 03-555, 2004 WL 2496877 (E.D. Pa. Nov. 2, 2004), made the crucial point that a "claim of right" defense fails when it is just a "post hoc justification for the alleged misconduct."  Id. at *6.

- 4 -

- 5 -

Vitillo was a government contracting fraud case alleging padded hours.  The government filed a motion *in limine* seeking to exclude expert accounting testimony that Vitillo's companies were actually entitled to more money than they were paid.  The district court excluded such expert testimony offered as a post hoc "set-off," noting that such evidence was not a defense if the defendants knowingly falsified hours.  Id. *8.  However, the district court expressly admitted expert testimony that the companies' hourly billing system was riddled with mistakes, holding: "The accountants' testimony is relevant to establish the fact that there were numerous mistakes made in the formulation of the bills submitted, and that Defendants lacked the specific intent to commit the violation of [18 U.S.C. Section] 666."  Id. at *9.

The government's additional cases all fit the pattern of attempted post hoc "set-off" defenses, or frauds perpetrated to collect otherwise uncollectible debts, rather than invoices submitted to collect money that the defendant honestly believed should and would be paid, regardless of any inaccuracies in bills.  See United States v. Casey, 951 F.2d 892 (8th Cir. 1991) (attempt to withdraw guilty plea to Medicaid fraud; "set-off" claim that doctor was owed money for Medicaid claims that he did not submit did not negate element of guilty plea that he committed fraud on bills he did submit); United States v. Richman, 944 F.2d 323  (7th Cir. 1991) (inapplicable here, because case did not involve claim of right defense, but instead held that attorney who bribed insurance adjuster had defrauded insurance company of money and property by implicitly depriving insurer of the money paid to employee in bribes).

## II.     CONCLUSION

For all of the foregoing reasons, the Court should deny the Government's Motion *In Limine* to Preclude Defendants from Mounting Claim-of-Right Defense to Fraud Charges.

Respectfully submitted,

_____
Reid H. Weingarten (D.C. Bar #365893)
Brian M. Heberlig (D.C. Bar #455381)
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W.
Washington, D.C.  20036-1795
(202) 429-3000

Michele A. Roberts
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C.  20036
(202) 887-4306

Christopher B. Mead
London & Mead
1225 19th Street, N.W.
Suite 320
Washington, D.C.  20036
(202) 331-3334

Counsel for Douglas Jemal


Stanley M. Brand
Ross Nabatoff
The Brand Law Group
923 Fifteenth Street, N.W.
Washington, D.C. 20005
(202) 662-9700

Counsel for Norman Jemal

Paul Kemp
Carol Elder Bruce
Venable LLP
575 7th Street, N.W.
Washington, D.C. 20004
(202) 344-4400

Counsel for Blake Esherick

Dated: July 17, 2006

- 7 -