UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                )
UNITED STATES                   )
                                )
        v.                      )        Crim. No.  05-359-1, -2, -3 (RMU)
                                )
DOUGLAS JEMAL, *et al.*,         )
                                )
            Defendants.         )
_____)

**DEFENDANTS' CONSOLIDATED OPPOSITION TO GOVERNMENT'S MOTION *IN LIMINE* TO PRECLUDE DEFENDANTS FROM INTRODUCING EVIDENCE OR ARGUING THAT OTHERS IN ADDITION TO MICHAEL LORUSSO WERE INVOLVED IN GOVERNMENT DECISIONS AND GOVERNMENT'S MOTION *IN LIMINE* TO (1) PRECLUDE DEFENDANTS FROM INTRODUCING EVIDENCE TO SUGGEST THAT MICHAEL LORUSSO'S ACTIONS BENEFITTED THE PUBLIC INTEREST AND (2) PRECLUDE DEFENDANTS FROM ELICITING TESTIMONY FROM EXPERT WITNESS AS TO REASONABLENESS OF 77 P STREET LEASES**

The government has filed two motions *in limine* asserting that if Defendants corruptly intended to influence Lorusso, it does not matter <u>legally</u> that he acted in the public interest, negotiated market-term leases, or was just one of many decision-makers.  However, if Lorusso was just one of many decision-makers, acted in the public interest, and negotiated market-term leases, it is significantly less likely <u>factually</u> that Defendants risked their reputations, business, and liberty in attempts to bribe Lorusso, less likely that Defendants understood that they had improperly influenced Lorusso, and less likely that Defendants had the corrupt intent to commit the offenses charged in the Indictment.  In criminal trials the Defendants' rights to present evidence disproving corrupt intent always come first.  The

government's arguments about the insufficiency of legal defenses belong in jury instruction requests, not motions *in limine*.[1]

## I.    INTRODUCTION

The Indictment alleges, in substantial part, that the Defendants provided various things of value to then Deputy Director of the District of Columbia's Office of Property Management Michael Lorusso ("Lorusso") in order to influence, or induce Lorusso to perform, a series of official acts relating to (a) the District's lease of and subsequent unconsummated effort to purchase a vehicle impound lot at 4800 Addison Road, Capitol Heights, Maryland, and (b) the District's lease of, and payment of invoices related to tenant improvements at, commercial office space in a building at 77 P Street, N.E., Washington, D.C.  See Indictment at 5-8 (¶¶ 15-16), 14-15 & 17 (¶ 4).  The evidence the government seeks to preclude Defendants from offering at trial should be admitted, as it goes to the essential elements of the offenses alleged, and will form a necessary and crucial part of the defense case.

---

[1] After receiving the government's Jencks package for Lorusso, it appears that the government has an obligation under D.C. Rule of Professional Conduct 3.8 ("Special Responsibilities of a Prosecutor") to concede that Lorusso was not improperly influenced.  The Jencks package confirms that Defendants and Lorusso never agreed, either explicitly or implicitly, that in exchange for any of the items of value alleged in the Indictment, Lorusso would perform any of the official acts listed in the Indictment.  At the pretrial hearing addressing Defendants' Motions to Dismiss, government counsel made the stunning admission that Lorusso had never agreed to do anything for the Defendants as a *quid pro quo*.  As a result of that admission, defense counsel wrote a letter to AUSA Dubester asking him comply with his obligations under Rule 3.8 to disclose "any evidence or information that the prosecutor knows or reasonably should know tends to negate the guilt of the accused or mitigates the offense . . . ."  See March 10, 2006 letter from Christopher B. Mead to AUSA Mark H. Dubester, attached as Exhibit 1 to this Opposition.  That letter specifically asked government counsel to disclose that the Defendants never asked for any favors, and Lorusso never agreed or intended to do any of the official acts listed in the Indictment in return for any items of value from the Defendants.  Defendants request that the Court ask government counsel to confirm that he has no proof of any *quid pro quo*, and reconsider Defendants' Motions to Dismiss when the government concedes what it should have in the briefing on those motions.

## II.    ARGUMENT

### A.    Evidence Regarding Other D.C. Government Officials

Defendants are entitled to show that individuals other than Lorusso were involved in decisions relating to Douglas Development Corporation ("DDC") because such evidence directly relates to Defendants' intent. See, e.g., United States v. Hurn, 368 F.3d 1359, 1363 (11th Cir. 2004) ("a defendant must generally be permitted to introduce evidence directly pertaining to any of the actual elements of the charged offense" and "evidence pertaining to collateral matters that, through a reasonable chain of inferences, could make the existence of one or more elements of the charged offense . . . more or less certain").

Counts One and Two of the Indictment charge Defendants with conspiring to bribe and bribing Lorusso. In order to prove that Defendants committed the offense of bribery, the government must prove beyond a reasonable doubt the following three elements: (1) Defendants directly or indirectly promised, offered, or gave something of value to Lorusso; (2) Defendants acted with intent to influence a particular future official act; and (3) Defendants acted corruptly, that is, with the purpose of accomplishing either an improper end result, or a lawful result by some unlawful method or means. See Criminal Jury Instructions for the District of Columbia, Instr. 4.83 (4th ed. 2002); Fifth Circuit District Judges Association Pattern Jury Instructions (Criminal Cases), Instr. 2.12 (2001). Thus, the government must prove at trial that Defendants had the corrupt intent necessary to satisfy the second and third elements of the offense. The corrupt intent requirement "is in the nature of a *quid pro quo* requirement; that is, there must be 'a specific intent to give . . . something of value *in exchange* for an official act.'" United States v. Alfisi, 308 F.3d 144, 149 (2d Cir. 2002) (quoting United States v. Sun-Diamond Growers of Cal., 526 U.S. 398, 404-05 (1999)). Evidence from which the jury could infer that

Defendants did not have this corrupt intent is therefore crucial to Defendants' case and should be allowed at trial.[2]

The government's case with respect to Defendants' alleged bribery of Lorusso in exchange for particular official acts benefiting DDC is completely circumstantial.  Accordingly, evidence that other individuals in the D.C. Government had some role in making decisions that benefited DDC is critical because it bears on Defendants' intent in providing things of value to Lorusso.  If there was little or no possibility that Lorusso could make a decision affecting DDC unilaterally, that is evidence from which the jury could infer that it is less likely that Defendants would seek to bribe Lorusso.  The government has acknowledged in its motion that other individuals were in fact "involved in various degrees in Lorusso's decisions and actions." Government's Motion *in Limine* to Preclude Defendants from Introducing Evidence or Arguing that Others in Addition to Michael Lorusso Were Involved in Government Decisions ("Gov't Mot. to Preclude Evid. of Others") at 2.  For example, the government points out that "the attorneys for the (then) Office of Corporation Counsel reviewed certain of the leases for legal sufficiency" and "some of the agency directors or other personnel were involved in the decision to move their agencies."  Id.  Yet the government now unfairly seeks to limit the Defendants' ability to establish these facts.

---

[2] For the same reasons, Defendants will argue at trial that they provided things of value to Lorusso based on friendship or a personal relationship with him because such evidence tends to show that Defendants did not have the requisite intent needed to violate the bribery statute.  See Defendants' Proposed Jury Instruction No. 25 (Bribery -- Alternative Purpose) (citing United States v. Frega, 179 F.3d 793, 807 (9th Cir. 1999) (approving instruction that "[a] gift or favor bestowed on a [public official] solely out of friendship, to promote good will, or for motive wholly unrelated to influence over official action does not violate the bribery statutes") and United States v. Sawyer, 85 F.3d 713, 741 (1st Cir. 1996) ("we think the jury needs to be told specifically that the defendant has not violated the bribery component of the Travel Act . . . if his intent was limited to the cultivation of business or political friendship")).

The government clouds the issue by arguing that "it is no defense that a bribe recipient lacks the power to provide a requested official action, service or contract." Id. at 1. But Defendants do not intend to present this evidence as an absolute defense to the bribery charges against them, and therefore the authority relied upon by the government is inapposite. Rather, Defendants seek to show that many individuals working for the District reviewed and approved the transactions at issue because such evidence will assist the jury in determining Defendants' intent in giving things of value to Lorusso. A defendant "is entitled to have the jury consider this [type of evidence], not as a complete defense like duress but as bearing on the specific intent required for the commission of bribery." United States v. Barash, 365 F.2d 395, 401-02 (2d Cir. 1966) (jury should have been instructed regarding threats of economic harm made by public official to defendant).

Finally, evidence that other D.C. Government officials were involved in decisions affecting DDC will also assist the jury in evaluating Lorusso's credibility as a witness. For example, testimony of other D.C. Government employees about the timing of certain decisions and Lorusso's role in the decision-making process may contradict Lorusso's testimony on those same subjects. Thus, this evidence will be a necessary component of the jury's consideration of the entire case at trial.

For these reasons, the Court should allow Defendants to present evidence that other individuals associated with the District of Columbia were involved in making the decisions involving DDC at issue in the instant case.

B.    **Evidence Regarding Benefit to the Public Interest and Reasonableness of the 77 P Street Street Leases**

Defendants should also be permitted to introduce evidence that the District benefited from the transactions at issue in the case, as well as expert testimony relating to the commercial reasonableness of the 77 P Street leases. Again, the government's motion misses the mark by arguing that "it is no defense [to bribery] that the defendant intended to influence an official act that was lawful or even desirable or beneficial to the public interest." Government's Motion *in Limine* to (1) Preclude Defendants from Introducing Evidence to Suggest that Michael Lorusso's Actions Benefitted the Public Interest and (2) Preclude Defendants from Eliciting Testimony from Expert Witness as to Reasonableness of 77 P Street Leases at 1. As with the evidence relating to other D.C. Government officials, Defendants do not seek to establish an absolute defense, but will instead offer this evidence as circumstantial proof bearing on their intent as to the alleged bribery of Lorusso.

Moreover, evidence that the transactions at issue were beneficial to the District and/or commercially reasonable in the context of the D.C. real estate market directly relates to whether Defendants had the intent to defraud the D.C. Government, as alleged in Count Three of the Indictment. See Indictment at 5-8 (¶¶ 15-16), 14-15 & 17 (¶ 4). Like the offense of bribery, the offense of mail fraud requires that the government prove specific intent on the part of the defendant. See 2 Leonard B. Sand et al., Modern Federal Jury Instructions - Criminal ¶ 44.01 Instr. 44-3 (Matthew Bender); 2 Kevin F. O'Malley et al., Federal Jury Practice & Instructions - Criminal § 47.03 (5th ed. 2000) (government must prove "that the particular defendant knowingly and willfully participated in the scheme or artifice to defraud, with knowledge of its fraudulent nature and with specific intent to defraud"). Therefore, evidence of the commercial

value and reasonableness of the transactions should be admitted as circumstantial evidence from which the jury could infer that Defendants did not have the requisite specific intent to defraud.

Defendants' proposed expert testimony is of particular importance in this respect. Defendants have disclosed to the government that they will seek to offer the testimony of Stephen Goldstein, the Vice Chairman of Studley, a national real estate firm.[3]  Mr. Goldstein is expected to testify that the leases and subsequent addenda between various D.C. Government agencies and Cayre/Jemal's Gateway for the space at 77 P Street were all within market rates for similar commercial space.  This testimony is necessary because proof demonstrating the reasonableness of the leases is relevant to an actual element of the offense of Mail Fraud -- Defendants' specific intent to defraud the D.C. Government.  It is self-evident that, all things being equal, the D.C. Government would seek to enter into commercially reasonable or valuable transactions.  The decision to enter into such transactions would not require any inducement or fraud on Defendants' part because of their objective value to the District.  Therefore, evidence that the transactions at issue were valuable or commercially reasonable necessarily bears on whether Defendants had the specific intent to defraud the D.C. Government.  Courts have recognized that, because of the difficulty of proving a defendant's actual mental state, a defendant should be allowed to introduce evidence from which the jury could infer his mental state.  See, e.g., Hurn, 368 F.3d 1365 ("Because proof demonstrating the 'reasonableness' of the defendant's beliefs [in tax case] was therefore indirectly relevant to an actual element of the offense ('willfullness') through a short chain of inferential reasoning, the defendant had the constitutional right to introduce it.") (citing and discussing United States v. Lankford, 955 F.2d

_____

[3] Mr. Goldstein's qualifications are described in more detail in Defendants' Expert Disclosure.

1545, 1551 (11th Cir. 1992)). Similarly, Defendants should be permitted to introduce evidence relating to the value and/or commercial reasonableness of the transactions at issue.

## III.    CONCLUSION

For the foregoing reasons, the Court should deny the government's motions and allow Defendants to present evidence relating to their intent at trial.

Respectfully submitted,

_____
Reid H. Weingarten (D.C. Bar #365893)
Brian M. Heberlig (D.C. Bar #455381)
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W.
Washington, D.C.  20036-1795
(202) 429-3000

Michele A. Roberts
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C.  20036
(202) 887-4306

Christopher B. Mead
London & Mead
1225 19th Street, N.W.
Suite 320
Washington, D.C.  20036
(202) 331-3334

Counsel for Douglas Jemal

Stanley M. Brand
Ross Nabatoff
The Brand Law Group
923 Fifteenth Street, N.W.
Washington, D.C. 20005
(202) 662-9700

Counsel for Norman Jemal


Paul Kemp
Carol Elder Bruce
Venable LLP
575 7th Street, N.W.
Washington, D.C. 20004
(202) 344-4400

Counsel for Blake Esherick

Dated:  July 17, 2006