# EXHIBIT B

## Heberlig, Brian

| | |
|---|---|
| **From:** | Dubester, Mark (USADC) [Mark.Dubester@usdoj.gov] |
| **Sent:** | Monday, August 14, 2006 1:51 PM |
| **To:** | Heberlig, Brian |
| **Cc:** | Lynch, Timothy (USADC) |
| **Subject:** | RE: Meeting Tomorrow |
| **Attachments:** | proposed stipulations.wpd; Proposed Stipulations Attachment A.wpd; JEMAL CITY COUNCIL HEARING TRANSCRIPT.pdf |

Brian --

Please distribute to your colleagues.

The government is willing to consider the following:

    1)  Witness list next Monday, August 21, 2006;
    2)  Jencks materials for 30 witnesses on September 4, 2006 -- a week prior to opening statements.

This gives you an encompassing witness list as well as the Jencks materials for four times as many witnesses than presently contemplated.  The government will produce the balance after opening statements.  In exchange, we request you agree to the proposed stipulations.

(We note there is one witness who has testified in the grand jury and affirmatively did not want his/her identity and contents of his/her testimony disclosed if he/she were not called as a witness.  We do not know yet whether we will call this individual.  We feel obliged to maintain the confidentiality of this individual's identity if he/she is not to be a witness.  We will produce this single witness's testimony at least two days prior to this individual's testimony, if we were to call him/her.)

Although I recognize you have asked for more, we believe that the government is being exceptionally fair and more than generous:  We are willing to give the defendants a mountain of materials (albeit less than you seek), and are asking the defendant to give up virtually nothing other than its right to put the government through some logistical difficulties in handling certain documents at trial.   No possible basis exists to conclude that your ability to prepare for cross-examination would be impacted, and the requested stipulations are matters you would likely agree to even if they were not linked to your desire for the materials and information you have sought in your email.

In addition, there are two other aspects of any overaching agreement that are important to us.  First, the defense must agree not to refer to what government witnesses will say in their opening statements.  The purpose of Jencks material is to permit preparation for cross-examination, not to provide a road-map of the government's case.  Second, the defense must accept that this agreement resolves the issues and not seek relief from Judge Urbina yet again on these same topics.

Finally, we have attached a transcript of Mr. Jemal's City Council testimony.

We would like to keep the issues you have raised in paragraphs 3, 4 and 5 separate at this time.  As to 5, for example, I believe the plea agreement is part of the public record, nonetheless, we will provide it to you.  As to number 3, it is the government's obligation under Brady/Giglio to inform you of the name of the witness and the nature of the exculpatory testimony in order that the potentially helpful testimony not be deemed "suppressed" by the government; it is not to provide you the exact words the witness has used.  See, e.g., United States v. Blackley, 986 F. Supp. 600, 604 (D.D.C. 1997) (citing cases).  As to number 4, the government will respond in the near future.

Sincerely,

Mark

---

**From:** bheberlig@steptoe.com [mailto:bheberlig@steptoe.com]
**Sent:** Monday, August 14, 2006 11:18 AM
**To:** Dubester, Mark (USADC)
**Cc:** Lynch, Timothy (USADC)
**Subject:** Meeting Tomorrow

**Mark:**

**In anticipation of our meeting tomorrow, I wanted to let you know what the Defendants would like to obtain from the government.  The Defendants are prepared to consider any reasonable stipulations (which I understand you will be sending over sometime today) and will provide a witness list to the government.  In exchange, we would like:**

**1)  A witness list to be provided immediately;**

**2)  Jencks materials for all government witnesses to be provided immediately (we are already inside 30 days, which has been the standard Jencks disclosure deadline in our experience in cases of this magnitude);**

**3)  FBI 302s and/or grand jury transcripts relating to the *Brady* and *Giglio* disclosures contained in the government's Discovery Letter #11, without which the disclosures are incomplete (to include information on Grace Carr, Barbara Turner and Mary Myers, as well as any investigatory materials relating to the investigation of Mr. Lorusso's unauthorized credit card use by the FBI and/or the D.C. Auditor);**

**4)  The "rough notes" of the interviews of Mr. Lorusso (including the September 8, 9 and 21, 2004 and November 8 and 10, 2004 interviews); and**

**5)  Mr. Lorusso's plea agreement (the omission of which from the initial Jencks disclosures we assume was an oversight).**

**I will look out for the proposed stipulations today.  Please let me know what time you**

**would like to meet tomorrow.  Thank you.**

**Brian M. Heberlig**
**Steptoe & Johnson LLP**
**1330 Connecticut Avenue, N.W.**
**Washington, D.C.  20036**
**(202) 429-8134 (phone)**
**(202) 261-0558 (fax)**
**bheberlig@steptoe.com**
**www.steptoe.com**

This e-mail message is confidential, is intended only for the named recipient(s) above, and may contain information that is attorney-client privileged, attorney work product or exempt from disclosure under applicable law.  If you have received this message in error, please immediately notify the sender by return e-mail and delete this e-mail message from your computer. Thank you.

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA        :
                                      :
          v.                       :       **Crim. No. 05-359-01, -2, -3 (RMU)**
                                        :
DOUGLAS JEMAL ET AL.         :

## STIPULATIONS

## I. STIPULATION AS TO CERTAIN EXHIBITS

The defendants Douglas Jemal, Norman Jemal, and Blake Esherick, through counsel, hereby knowingly waive any and all objections to the admissibility of the documents listed in the following five categories of documents, and further stipulate to the accompanying description of the documents:

### 1. Business Records of Specific Entities

The exhibits attached to this stipulation as listed in "Schedule A."

These exhibits are true copies of business records.

### 2. Search of 6001 Nevada Avenue

Government Exhibits 200-213, 750-756.

These exhibits consist of documents taken from 6001 Nevada Avenue, Washington, D.C. pursuant to a search of the premises on February 23, 2005.

### 3. Search of Douglas Development Offices

Government Exhibits 230-246.

These exhibits consist of documents taken from the offices of Douglas Development Corporation, 702 H Street, N.W., Washington, D.C. pursuant to a search of that location on February 23, 2005.

4. <u>District of Columbia Government Documents</u>

Government Exhibits 250-264.

These exhibits consist of documents from the District of Columbia Government, Office of Financial Records Management (OFRM);

Government Exhibits 265-285.

These exhibits consist of documents obtained from the District of Columbia Government, Office of Property Management.

5. <u>Douglas Development Documents</u>

Government Exhibits 96 though 198; 450 through 493.

These exhibits consist of documents obtained from Douglas Development Corporation as follows. Certain Grand Jury and trial subpoenas were issued to Douglas Development Corporation (Douglas Development), in response to which Douglas Development provided certain documents. In some instances, Douglas Development provided original documents; in other instances, Douglas Development provided copies of original documents. The documents produced by Douglas Development Corporation were, in many instances, numbered before they were produced to the government. The exhibits marked as evidence are, in fact, the actual documents produced by Douglas Development or true copies of the documents.

## II. <u>OTHER STIPULATION AS TO AUTHENTICITY</u>

The parties further stipulate and agree as a fact:

The disc containing Douglas Jemal's testimony before the D.C. City Council, and the transcript of that testimony, constitute a true and accurate recording and transcription of Mr. Jemal's testimony.

## III. <u>STIPULATIONS OF TESTIMONY AND FACT</u>

The parties further stipulate and agree to the following facts:

1.    If called as a witness, the custodian of records for Boot Barn would testify that the writings on Government Exhibit 14, the Boot Barn invoice, describe the particular items referenced on that invoice. Further, as to Government Exhibit 14, although defendant Jemal received a "military" discount, in fact, he did not serve in the military.

2.    If called as a witness, the "Domain" custodian of records would testify: "There were two sales orders placed at Domain's Montgomery Mall store on October 7, 2001 by Blake Esherick. The first order was for a dark brown leather chair totaling $1141.51 picked up at Domains Montgomery Mall store. The second order was for a dark brown leather sofa totaling $1789.80 delivered on October 26, 2001, to 7804 Radnor Road, Bethesda, Maryland. Both orders totaled $2931.31 and were paid for with cash on October 7, 2001."

3.    In connection with the search of Douglas Development, and based on discussions with Douglas Development personnel present during the search, the FBI marked the rooms of various Douglas Development personnel with specific letters and took photographs of the rooms with the letters visible. The defendants stipulate as follows:

Douglas Jemal's office was correctly marked as Room R by the FBI during its search of Douglas Development Corporation on February 23, 2005;

Norman Jemal's office was correctly marked as Room F by the FBI during its search of Douglas Development Corporation on February 23, 2005;

Blake Esherick's office was correctly marked as Room G by the FBI during its search of Douglas Development Corporation on February 23, 2005;

Paul Milstein's office was correctly marked as Room I by the FBI during its search of Douglas Development Corporation on February 23, 2005;

John, "Jack," Brownell's office was correctly marked as Room Q by the FBI during its search of Douglas Development Corporation on February 23, 2005;

Sabra Quinn's office space was correctly marked as Room D by the FBI during its search of Douglas Development Corporation on February 23, 2005.

The defendants further stipulate that the photographs marked as Government's Exhibits 735-1 through 41 are true and accurate depictions of the interior of Douglas Development on February 23, 2005, including the specific rooms listed above.

IV.  MISCELLANEOUS AGREEMENTS (NOT TO BE PRODUCED TO THE JURY)

As to the documents excluded by Court Order, such as those which relate to 2004 and 2005 transactions or the potential insurance fraud, the defendants stipulate at this time to authenticity only and, in connection with Category 1 above, that the documents satisfy the business records exception to the hearsay rule. The defendants will not interpose authenticity or hearsay objections to said documents if they are determined to be admissible.

The parties further agree that if it becomes necessary at trial for the Government to

introduce documents in the nature of business records, search documents, District of Columbia
Government documents, or documents obtained from Douglas Development that have not yet
marked by the government as trial exhibits, or to correct a technical oversight in the lists
associated with this agreement, the defense will, in good faith, stipulate that the documents are
authentic and that, if applicable, said documents are business records within the meaning of the
hearsay rule.


_____          _____
Attorney for the Government (date)          Attorney for Douglas Jemal (date)


                                            _____
                                            Attorney for Norman Jemal (date)


                                            _____
                                            Attorney for Blake Esherick (date)

Attachment A - Business Records

| Exh. No. | Description |
|----------|-------------|
| 4 | Travel Agency Records |
| 5 | Fidelity Bank Records |
| 6 | ADP Records - Employer and employee W-2s  2002 |
| 7 | ADP Records - Employer and employee W-2s  2003 |
| 8 | Settlement Docs - 111 Mass Ave |
| 10 | Bellagio Hotel Records for 2001 |
| 11 | Bellagio Hotel Records for 2002 |
| 13 | Records from J Brown Jewelers |
| 14 | Records from the Boot Barn |
| 15 | Records from the Barbary Coast |
| 16 | Records from Domains |
| 17 | HBL Records |
| 18 | Sabra Gould Amex |
| 19 | Douglas Development American Express |
| 35 | Smith Barney Records |
| 36 | BBT Esherick Bank Records for Esherick- 2001-02 |
| 37 | BBT Esherick records for Esherick - 2000 |
| 38 | Eagle Bank records - Esherick |
| 38B | Eagle Bank Deposit Items |
| 38D | Eagle Bank - additional items |
| 39 | Eagle Bank Credit Application records for Esherick |
| 40 | Adams Bank Records for Esherick |
| 41 | Cap One Credit Card account records- ESHERICK |
| 42 | BBT records - less than $250 |

| Exh. No. | Description |
|----------|-------------|
| 43 | BBT small Items |
| 44 | Bank or America credit card records |
| 44A | Affidavit from Bank of America |
| 50 | Records from Regional Title |
| 51 | D. Jemal Settlement Statement |
| 52 | N. Jemal Settlement Statement |
| 53 | First Liberty National Bank Records |
| 54 | MTD Records - Adams National Bank |
| 55 | Articles of Incorporation - MTD |
| 57 | Esherick college transcript |
| 58 | Adams Bank - Specified DDC payroll account records for 2000 |
| 60 | D. Jemal Amex |
| 61 | Adams Bank D. Jemal Records (2001) |
| 62 | N. Jemal- Adams Bank Records |
| 63 | D. Jemal Adams Bank Checks (2002) |
| 64 | D. Jemal, First Union Account |
| 65 | N. Jemal Amex Account xxx 26004 |
| 66 | N. Jemal Amex Acct. xxx 21003 |
| 67 | N. Jemal Amex Acct. xxx11009 [Optima] |
| 68 | HSBC, CAYRE-JEMAL GATEWAY RECORDS |
| 69 | Miscellaneous DDC documents (?) |
| 91 | Prime Pay - 1999 W-2s |
| 92 | Prime Pay - 2000 W-2s |
| 93 | Prime Pay - 2001 W-2s |
| 94 | Prime Pay - N. Jemal pay history, 1999 and 2000 |
| 95 | Prime-Pay - 2001 W-2s |

| Exh. No. | Description |
| --- | --- |
| 218-222 | Verizon Wireless Cellphone Billing records |
| 224 | |
| 227, 228 | |
| 500 | Morgan Stanley loan records |