UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES,** | )<br>)<br>) |
| v. | ) Crim. No. 05-0359-1, -2, -3 (RMU) |
| **DOUGLAS JEMAL, et al.,** | )<br>)<br>) |
| **Defendants.** | )<br>) |

**DEFENDANTS' RESPONSE TO THE GOVERNMENT'S
MOTION FOR PRETRIAL RULING ON ADMISSIBILITY OF BUSINESS
RECORDS AND AUTHENTICITY OF DOUGLAS DEVELOPMENT RECORDS**

The Court should deny the government's motion for the pretrial admission of thirty-four (34) government exhibits consisting of thousands of pages of documents. Most of the records at issue are financial documents, such as bank statements, cancelled checks, and credit card invoices. Rather than mark for admission the relevant pages, the government seeks the pretrial admission of entire years of financial records, the vast majority of which are completely irrelevant to this case. The government apparently intends to attempt to make this trial about the Defendants' lifestyles and spending habits, in an attempt to prejudice them in the eyes of the jury. The Court should not permit the government to admit such extraneous material. Even the government exhibits at issue that are not financial records often contain superfluous information that is irrelevant to the case and in many cases prejudicial. The Court should deny the government's motion.

The government also seeks a ruling that documents produced by Douglas Development Corporation ("DDC") during the grand jury investigation, and marked with the Bates label "DDC," are authentic under Federal Rule of Evidence 901. Specifically, the

- 2 -

government asks the Court to rule that these documents "are what the government claims them to be: documents that came from Douglas Development." Government's Motion For Pretrial Ruling On Admissibility Of Business Records And Authenticity Of Douglas Development Records at 3 ("Gov't Motion"). The Defendants already offered to stipulate to the authenticity of these records during the negotiations regarding the Jencks materials. Even though the government refused to produce the Jencks material in a timely manner, the Defendants will stipulate to the authenticity of records produced by DDC. That is, Defendants stipulate that every document produced by DDC, bearing a "DDC" Bates label, is a document or a true copy of a document that came from DDC.[1]

## I.  DISCUSSION

The Court should deny the government's motion for the pretrial admission of the government exhibits identified in Attachment E to its motion because the majority of the exhibits at issue contain superfluous information that is irrelevant and/or prejudicial. As a general matter, there is simply no reason to admit any exhibits prior to trial. At this stage of the proceedings, before the government has produced Jencks material and made its opening statement, the Defendants have serious questions about the government's theory of the case and face difficulty determining the relevance of the proposed government exhibits without more information. The government does not explain why this case should deviate from standard trial procedure: when the government is at a point in the presentation of its case-in-chief when a qualified government witness is testifying about a matter related to a government exhibit, the government can move the

---

[1] The Defendants do not stipulate that all of these documents constitute "business records" of DDC within the meaning of Federal Rule of Evidence 803(6).

admission of the document at that time.  Any issues related to the admissibility of a government exhibit can be taken up by the Court outside the presence of the jury before the trial starts in the morning.  In fact, such a procedure appears to be contemplated by the Court's Standing Order.  See Standing Order at 6 (¶ 10.e).  The government's interest in "streamlining" the trial should not trump the Defendants' right to preserve objections to irrelevant or prejudicial evidence until such determinations can be made intelligently during the course of the trial.

In any event, much of the evidence proffered by the government appears to be irrelevant on its face and should not be admitted by the Court at this time.  The government's "relevance proffers" for each exhibit are deficient.  The government exhibits at issue fall into three general categories:  (1) bank statements, returned checks, credit card invoices and other financial records, (2) DDC employee W-2 records, and (3) other miscellaneous records.

### A. Financial Records

Many of the government exhibits at issue consist of bank statements, returned checks, credit card invoices and other financial records for the Defendants and other individuals.[2]  The Court should decline to admit these records at this time because the government exhibits are overbroad and contain irrelevant information that is also prejudicial to the Defendants.  The government appears intent on trying to introduce evidence regarding the lifestyles, spending habits and personal expenses of the Defendants -- information that is irrelevant to the case but could prejudice the Defendants in the eyes of the jury.  The only Defendant whose income is at issue is Blake Esherick, who is charged with tax evasion in Counts Six through Eight.  Even in

---

[2] The records at issue in this category are government exhibits 18, 36, 37, 38, 38B, 38D, 39, 40, 41, 42, 43, 44, 58, 60, 62, 63, 65, 66, and 68.


the case of Mr. Esherick, however, the government does not explain how minute details regarding Mr. Esherick's monthly expenses are relevant to its case. Without more information, the Court should decline to admit the proffered government exhibits at this time.

For example, government exhibit 60 consists of statements for Douglas Jemal's American Express credit card from January 2001 through August 2004. This single exhibit is several hundred pages long. The government's "relevance proffer" states that these records "corroborate Lorusso by showing payments for, e.g., trips to Las Vegas, repeated dinners at Capital Grille, and cowboy boots purchases at Boot Barn." Defendants acknowledge the relevance of pages of the specific statements reflecting expenses for items provided to Mr. Lorusso for the two trips to Las Vegas, the cowboy boots, and any dinners that Lorusso attended.[3] However, the proffered exhibit contains a significant volume of additional extraneous, irrelevant and prejudicial information. The government fails to disclose that Mr. Lorusso resigned his job with the District of Columbia in January 2003, and the government does not contend that the Defendants provided him with anything of value after that date. Nonetheless, the government has inexplicably moved to admit Douglas Jemal's personal American Express bills through August 2004 -- more than eighteen months after Lorusso left the District of Columbia government. There is no conceivable relevance to these records, other than to attempt to prejudice the Defendants by introducing evidence regarding expensive spending

---

[3] From the Jencks material, however, Defendants expect that Mr. Lorusso will not be able to identify any particular dinner at the Capital Grille that he obtained at Douglas Jemal's expense. Douglas Jemal ate at the Capital Grille virtually every Thursday night during the time period at issue. Obviously, if the government cannot establish that Mr. Lorusso was treated to any particular dinner, it would be improper for the government to elicit evidence about all of the dinners purchased by Mr. Jemal and argue that they must have included dinners attended by Mr. Lorusso.

habits. This government exhibit exemplifies the overbroad nature of the exhibits the government seeks to admit prior to trial.

Similarly, government exhibits 65 and 66 consist of Norman Jemal's American Express statements from 2001 and 2002. The government's vague "relevance proffers" state that these records show things of value given to Lorusso, such as a Rolex watch and expenses related to a trip to Las Vegas. Again, while Defendants do not contest the relevance of those portions of the exhibits, they consist of a couple of pages within the several hundred pages of American Express bills marked by the government. The government's further claim that government exhibit 65 is also relevant to show the "relationship between Norman Jemal and Esherick" is vague and illogical.

Government exhibit 62 similarly consists of Norman Jemal's personal bank statements and cancelled checks from approximately January 2001 through November 2002. The government claims that these records reflect payments from Norman Jemal to American Express and payment to Fidelity Bank on a mortgage relating to the home at which Mr. Esherick lived. While those minor portions of the several hundred page exhibit are arguably relevant, the exhibit contains a substantial amount of completely superfluous information about Norman Jemal's personal finances. In sum, the Court should not permit the government to introduce evidence reflecting all of Norman Jemal's personal expenses and spending habits because such evidence is irrelevant and prejudicial.[4]

---

[4] With respect to the credit card records of a DDC employee who is not charged as a defendant, Sabra Gould, the government seeks to admit only the portion of her credit card statements that relate specifically to items allegedly purchased for Mr. Lorusso. See Government Exhibit 18. Defendants do not object to the relevance of these excerpts from the American Express statements at issue. The government's failure to similarly narrow the credit card statements of Douglas and Norman Jemal to only the relevant pages demonstrates

(Continued …)

The government also seeks to pre-admit government exhibits 36, 37, 38, 38B, 38D, 39, 40, 41, 42, 43, 44 and 58, which consist of bank statements, cancelled checks, deposit items, and credit card records for Defendant Esherick. These exhibits consist of thousands of pages of documents reflecting virtually every financial transaction of Mr. Esherick during approximately 2000 through 2004. The government's "relevance proffer" states merely that these records "show Esherick's income and expenses." Although Mr. Esherick's income is relevant in light of the tax evasion charges alleged in Counts Six through Eight, it is not at all clear why minute details regarding all of his personal expenses are relevant to the case. Without more information, the Court should deny the government's request to admit these exhibits prior to trial.

Finally, the government seeks to admit government exhibit 68, consisting of bank statements for Cayre Jemal's Gateway, the entity that owned the building at 77 P Street, from January 2001 through June 2003. The government claims that these records are relevant to "show financial circumstances associated with 77 P Street." Again, the government's proffer is too vague to be meaningful. If and when the trial evidence demonstrates that the Cayre Jemal's Gateway bank records are relevant, the Court can admit them at that time. The government has provided no reason for the Court to do so now.

---

(...Continued)
conclusively that the government is attempting to make this case about the spending habits of the Defendants in an effort to prejudice them in the eyes of the jury, which will likely consist of individuals of more modest means.

The Defendants also do not object to the relevance of the portion of government exhibit 63 that the government seeks to admit -- Check 6581 showing payment to American Express relating to the purchase of cowboy boots -- although there appears to be no reason to deviate from standard trial procedure and admit the record prior to trial.

### B.  DDC Employee W-2s

The Court should deny the government's motion to admit the W-2s of every DDC employee for the years 1999 (GX 91), 2000 (GX 92), 2001 (GX 93), 2002 (GX 6), and 2003 (GX 7).  The government's "relevance proffer" states that these records "show Esherick's salary and how it compares to other DDC employees' salaries."  Defendants submit that there is no need to admit the W-2 records for every DDC employee over a five year period.  A representative sample would suffice to serve the government's purposes.

### C.  Miscellaneous Exhibits

The government has also moved for the pretrial admission of several miscellaneous exhibits that will addressed in turn.

<u>Government Exhibit 5.</u>  The Court should deny government's request for the pretrial admission of government exhibit 5 -- records from Fidelity Bank regarding the 7804 Radnor Road house.  Defendants previously objected to this exhibit in the context of the government's Rule 902(11) notice as containing hearsay that does not come within the business records exception of Rule 803(6).  At the August 8, 2006 hearing, the Court ruled that it would deal with these double hearsay issues as they arise during trial.  <u>See</u> Transcript of August 8, 2006 hearing ("Tr.") at 32.  The government offers no reason for the Court to deviate from its prior ruling.  Moreover, the government's "relevance proffer" states that these records are being offered to show Douglas and Norman Jemal's ownership of the property at issue.  The government could prove that point any number of ways, including by limiting government exhibit 5 to the settlement statement at issue and excluding the irrelevant documents included in the current exhibit regarding the Jemals' income and expenses.

- 8 -

Government Exhibits 10, 11 & 15.  The Court should deny government's request for the pretrial admission of government exhibits 10 & 11 -- records from the Bellagio Hotel (GX 10 & 11) and the Barbary Coast Hotel (GX 15) in Las Vegas.  The government's "relevance proffer" states that these exhibits show things of value given to Lorusso and the relationship between Douglas Jemal and Esherick.  The proffer regarding the "relationship" between Douglas Jemal and Esherick is so vague as to be meaningless.  Defendants acknowledge that the pages of the hotel records at issue reflecting expenses for items provided to Lorusso are relevant.  Again, however, the government has included extraneous information in the exhibits, including the bills for every member of the Douglas Development party, receipts for such irrelevant items as t-shirts, hats and other souvenirs that Norman and Douglas Jemal appear to have purchased, and meal and entertainment expenses that are completely unrelated to Lorusso.  The Bellagio records relating to 2002 (GX 11) consist solely of receipts for meals and drinks at the pool bar.  Unless the government can prove that Lorusso was the beneficiary of these expenses -- information missing from the "relevance proffer" and the Jencks material provided to Defendants -- these records are completely irrelevant to the case.

Government Exhibit 13.  The government seeks the pretrial admission of a page of records from J. Brown Jewelers relating to the watch that was allegedly provided to Lorusso.  Defendants do not object to the relevance of this page of the exhibit, but there is reason to deviate from standard trial procedure and admit the record prior to trial.

Government Exhibit 14.  The government seeks the pretrial admission of an invoice and credit card receipt from the Boot Barn in Las Vegas, which reflect among other things two pairs of boots that were allegedly purchased for Lorusso.  Defendants do not object to

- 9 -

the relevance of this exhibit, but there is reason to deviate from standard trial procedure and admit the record prior to trial.

Government Exhibit 16.  The government seeks the pretrial admission of two invoices from Domain Home Fashions regarding furniture purchases by Blake Esherick. Defendants do not object to the relevance of this exhibit, but there is reason to deviate from standard trial procedure and admit the record prior to trial.

Government Exhibit 17.  The government seeks the pretrial admission of certain repair records that apparently relate to Lorusso's automobile.  Defendants do not object to the relevance of this exhibit, but there is reason to deviate from standard trial procedure and admit the record prior to trial.

Government Exhibits 54 & 55.  The government seeks the pretrial admission of bank records (GX 54) and the articles of incorporation (GX 55) for MTD Real Estate Services. Defendants do not object to the relevance of these exhibits, but there is reason to deviate from standard trial procedure and admit the record prior to trial.

## III. CONCLUSION

        For the foregoing reasons, the Court should deny the government's motion for the pretrial admission of exhibits. The Defendants are willing to stipulate that records produced by DDC during the investigation are authentic.

                                        Respectfully submitted,

                                        */s/*
                                        Reid H. Weingarten (D.C. Bar #365893)
                                        Brian M. Heberlig (D.C. Bar #455381)
                                        Steptoe & Johnson LLP
                                        1330 Connecticut Avenue, N.W.
                                        Washington, D.C. 20036-1795
                                        (202) 429-3000

                                        Michele A. Roberts
                                        Akin Gump Strauss Hauer & Feld LLP
                                        1333 New Hampshire Avenue, N.W.
                                        Washington, D.C. 20036
                                        (202) 887-4306

                                        Christopher B. Mead
                                        London & Mead
                                        1225 19th Street, N.W.
                                        Suite 320
                                        Washington, D.C. 20036
                                        (202) 331-3334

                                        Counsel for Douglas Jemal


                                        Stanley M. Brand
                                        Ross Nabatoff
                                        The Brand Law Group
                                        923 Fifteenth Street, N.W.
                                        Washington, D.C. 20005
                                        (202) 662-9700

                                        Counsel for Norman Jemal

                                                            - 11 -

                                                  Paul Kemp  
                                                  Carol Elder Bruce  
                                                  Venable LLP  
                                                  575 7th Street, N.W.  
                                                  Washington, D.C.  20004  
                                                  (202) 344-4400  

                                                  Counsel for Blake Esherick

Dated: August 21, 2006