# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

  vs.

DOUGLAS JEMAL, NORMAN J.
JEMAL and BLAKE C. ESHERICK,

  Defendants.

. Docket No. CR-05-0359
.
. Pages 2399 to 2525
.
.
. Washington, D.C.
. Wednesday, September 27, 2006
. 1:05 p.m.

DAY 14 - AFTERNOON SESSION
TRANSCRIPT OF A TRIAL
BEFORE THE HONORABLE RICARDO M. URBINA
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:  MARK H. DUBESTER, Esquire
         TIMOTHY G. LYNCH, Esquire
         U.S. ATTORNEY'S OFFICE
         555 Fourth Street, NW
         Room 5917
         Washington, DC 20001

For Douglas Jemal:  REID H. WEINGARTEN, Esquire
         BRIAN M. HEBERLIG, Esquire
         ERIK L. KITCHEN, Esquire
         STEPTOE & JOHNSON, L.L.P.
         1330 Connecticut Avenue, NW
         Washington, DC 20036

         MICHELE A. ROBERTS, Esquire
         JEFFREY M. KING, Esquire
         AKIN GUMP STRAUSS HAUER & FELD LLP
         1333 New Hampshire Avenue, NW
         Washington, DC 20036

         CHRISTOPHER B. MEAD, Esquire
         LONDON & MEAD
         1225 19th Street, NW
         Suite 320
         Washington, DC 20036

Proceedings recorded by machine shorthand, transcript produced
by computer-aided transcription.

```
 1   Q.   So it wasn't just the building, generally speaking,
 2   notwithstanding my lack of art skills, it was that area that
 3   you were going to rent?
 4   A.   Right.
 5   Q.   And just so we can make sure that my math is right, if it
 6   was this 3 acres at $10,000 a month, that would be $120,000 a
 7   year, is that right?
 8   A.   Right.
 9            MR. LYNCH:  Thank you.  I have no further questions.
10            THE COURT:  Is there anything from the jury?
11            Nothing.
12            All right.  Thank you, ma'am.  You may step down.
13            The Government's next witness.
14            MR. LYNCH:  Thank you, Your Honor.  The United States
15   calls to the witness stand Mark Loesberg.
16            Your Honor, the same rule would apply.  Are we doing
17   okay on that?
18            THE COURT:  Yes, we're doing well.
19            MARK LOESBERG, GOVERNMENT'S WITNESS, SWORN
20            THE COURT:  Good afternoon, sir.
21            THE WITNESS:  Good afternoon.
22                        DIRECT EXAMINATION
23   BY MR. LYNCH:
24   Q.   Good afternoon, sir.
25   A.   Good afternoon.
```

1   Q.  In a loud and clear voice, please tell the ladies and
2   gentlemen of the jury your full name, and spell your full name
3   for the court reporter.
4   A.  Mark Steven Loesberg, L-O-E-S-B-E-R-G.
5   Q.  Where did you grow up, Mr. Loesberg?
6   A.  In Silver Spring, Maryland.
7   Q.  And were you born and raised here?
8   A.  Yes, in the District area.
9   Q.  And would you tell the jury about your schooling?
10  A.  I attended Montgomery Blair High School, University of
11  Maryland and Potomac School of Law.
12  Q.  So you also have a law degree?
13  A.  I do.
14  Q.  And what do you do for work?
15  A.  I am owner of Capital Auto Auction here in the District.
16  We have a location here in Northeast Washington and in Temple
17  Hills, Maryland.
18  Q.  What is the business of Capital Auto Auction?
19  A.  We auction off cars.  Most of our clients are charities
20  and governmental organizations and private individuals.
21  Q.  And you're a lawyer, and are you also a used car salesman?
22  A.  I guess.  I don't usually like to use used car salesman,
23  but I sell used cars.
24  Q.  I just wanted to get that out.
25  A.  I understand.

1  Q.  All right. In May 2000, roughly around that time, did you
2  enter into any negotiations with representatives of Douglas
3  Development Corporation to lease some space at 4800 Addison
4  Road for your company?
5  A.  I submitted a letter of intent basically and offered to
6  lease a portion of the property out on Addison Road for $3,500
7  a month.
8  Q.  First of all, why did you need space for Capital Auto
9  Auction?
10 A.  Well, I was currently leasing space on Sheriff Road, which
11 is not far down the street. And that was coming to an end and
12 I was just looking around for any kind of space.
13 Q.  Did you ever make it out to 4800 Addison Road to look at
14 the site?
15 A.  I did.
16 Q.  And what did you find when you looked at it?
17 A.  A vacant property, quite large property, actually.
18 Q.  Okay. And you said that you submitted -- as part of these
19 negotiations, you submitted a proposal, is that right?
20 A.  I did.
21         MR. LYNCH: I would like to show to the witness, and
22 to the witness only, what's been marked as Government's Exhibit
23 426, pages 3 and 4.
24         THE CLERK: Government's Exhibit 426, pages 3 and 4
25 are marked for identification.

1   BY MR. LYNCH:

2   Q.   Going back to page 3, Mr. Loesberg, do you recognize these
3   two pages?

4   A.   I do.

5   Q.   And what are they?

6   A.   This one here, I guess 03, is the offer of intent I
7   prepared and submitted.

8   Q.   To whom did you -- to what company was this submitted?

9   A.   To the owner of the property, who I believe is Jemal
10  Company.

11          MR. LYNCH: At this point, Your Honor, I would move
12  into evidence Government's Exhibit 426, pages 3 and 4.

13          MR. HEBERLIG: No objection.

14          THE COURT: All right.

15                  (Government's Exhibit Number 426-003
16                  to 426-004 were admitted
17                  into evidence.)

18          THE COURT: Was the name of the company different in
19  those days?

20          THE WITNESS: Oh, Capital --

21          THE COURT: Dispatch.

22          THE WITNESS: -- Dispatch. That's another company we
23  also own. It was our dispatching company.

24          THE COURT: The same entity?

25          THE WITNESS: The same entity, yes.

BY MR. LYNCH:

Q. Just for the record, Capital Dispatch, this was the same purpose, you were looking for space for cars?

A. Yes, for storage of cars.

Q. And how many cars were you looking to store on this property?

A. Oh, probably about 800 to 1,000.

Q. How many cars does Capital Auto Auction have in stock usually on a given month?

A. Well, right now, since we have a location right now, we have probably in stock 1,400 cars.

Q. Let's go first to the property description in your proposal.

If you could read that bullet point one.

A. Approximately 3 acres located on Addison Road and improved with a building of approximately 10,000 square feet, and a description is attached and marked.

Q. And if we could go to that attached page, which is page 4.

Do you see that in front of you?

A. I do.

Q. And is there an area on that page that's circled?

A. Yes, there is.

Q. Is that circled area the area where you were proposing to rent space at 4800 Addison Road?

A. That's it, yes.

1  Q.  And do you see a marking where it says 10K?
2  A.  I do.
3  Q.  And is that 10K the 10,000 square foot building you were
4  talking about in that previous page of your proposal?
5  A.  Yes, sir.
6  Q.  All right. If we could go back to page 3, please, Taryn.
7      And what was the rental price you were offering to
8  pay for those three acres and the 10,000 square foot building?
9  A.  $3,500 per month.
10 Q.  And what does that work out to be a year, roughly
11 speaking?
12 A.  $42,000, something like that.
13 Q.  All right. Can we go to Government's Exhibit 422, please.
14     Mr. Loesberg, do you recognize Government's Exhibit
15 422?
16 A.  I do.
17 Q.  And what is Government's Exhibit 422?
18 A.  That is the picture of the Addison Road property.
19 Q.  And how does that correspond with the circled area that
20 you indicated on Government's Exhibit 426, page 4?
21 A.  Well, the left-hand portion of that property is what I was
22 looking at.
23 Q.  Okay. And if we could put that page up, Taryn, with page
24 426-0004.
25     So, again, could you just describe what's on the

1  screen here on the left and on the right.
2  A.  The left is the aerial photo of the property and the
3  schematic sketch is on the right-hand side of the property.
4  Q.  And I'm going to try to see if it works. Could you, using
5  your finger, trace on the photograph roughly the area you were
6  looking to rent from Douglas Development?
7  A.  I don't know if it's working.
8  Q.  Why don't I see if I can give it a try, and you can tell
9  me if it's approximately the right area.
10 A.  That's it, that's approximately it, yes.
11 Q.  Okay. So it's in front of that 10,000 square foot
12 building and behind that 10 square foot building --
13 10,000 square foot building?
14 A.  Yes.
15 Q.  Was there someone assisting you in your negotiations with
16 Douglas Development?
17 A.  Yes, there was.
18 Q.  Who was that person?
19 A.  Mr. Saul Goldfarb.
20 Q.  What is his relationship to you?
21 A.  He is just really an acquaintance, business acquaintance.
22 Q.  Now, that $3,500 a month, was that in the trade an
23 offering offer?
24 A.  Well, you have to start somewhere.
25 Q.  Were you willing to go a little higher?

1  A.   I was.

2  Q.   Roughly speaking, how much higher were you willing to go

3  for those three acres?

4  A.   I was thinking about $5,000, I guess, $5,000 a month,

5  around there.

6  Q.   Roughly speaking, $60,000 a year?

7  A.   That's correct.

8  Q.   Did you ultimately strike a deal with Douglas Development?

9  A.   No, I did not.

10 Q.   What did you do instead?

11 A.   Well, I went somewhere else because the price was -- the

12 counter was too high, I guess. I couldn't afford the counter.

13 Q.   And what did you find instead?

14      MR. HEBERLIG:  Objection, Your Honor.  Relevance.

15      THE COURT:  Rephrase the question.

16 BY MR. LYNCH:

17 Q.   Were you able to find a suitable property instead?

18 A.   I did.

19      MR. HEBERLIG:  Objection, Your Honor.  Relevance.

20      THE COURT:  All right.  That one is all right.  That

21 question is fine.

22      What's the next question?

23      MR. LYNCH:  That's my only question, Your Honor.

24 Thank you.  I have no further questions.

25                      CROSS EXAMINATION

BY MR. HEBERLIG:

Q. Good afternoon, sir. My name is Brian Heberlig. I represent Douglas Jemal.

So we're clear, do I understand correctly that you never met or spoke with anyone at Douglas Development about this deal?

A. That's correct.

Q. All these negotiations went through this Mr. Goldfarb?

A. That's correct.

Q. And everything you know about the negotiations was information you learned from him?

A. Yes.

Q. You just submitted a letter of intent or a proposal based on, as you put it, your opening offer, right?

A. That's correct.

Q. And Douglas Development didn't agree to that price?

A. Correct.

Q. And no lease was ever struck between you and Douglas Development, right?

A. That's right.

Q. You didn't receive any written counter-proposal from Douglas Development, did you?

A. No.

MR. HEBERLIG: Nothing further, Judge.

MR. KEMP: No questions. Thank you.