UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES, | ) |
| v. | ) Crim. No. 05-359-1, -2, -3 (RMU) |
| DOUGLAS JEMAL, ET AL., | ) |
| Defendants. | ) |

### DEFENDANTS' MOTION FOR JUDGMENT OF ACQUITTAL
### ON COUNT THREE FOR FAILURE TO PROVE A PROPER MAILING

Defendants Douglas Jemal, Norman D. Jemal, and Blake Esherick ("Defendants"), through counsel, hereby move this Court, pursuant to Federal Rule of Criminal Procedure 29(a), for a judgment of acquittal on Count Three of the Indictment, because the government has failed to prove any mailings made in furtherance of the alleged scheme to defraud, as required by the mail fraud statute, 18 U.S.C. § 1341. Defendants respectfully request oral argument on this motion. A proposed Order is attached.

Respectfully submitted,

_____
Reid H. Weingarten (D.C. Bar #365893)
Brian M. Heberlig (D.C. Bar #455381)
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036-1795
(202) 429-3000

          Michele A. Roberts
          Jeffrey M. King
          Akin Gump Strauss Hauer & Feld LLP
          1333 New Hampshire Avenue, N.W.
          Washington, D.C.  20036
          (202) 887-4306

          Christopher B. Mead
          London & Mead
          1225 19th Street, N.W.
          Suite 320
          Washington, D.C.  20036
          (202) 331-3334

          Counsel for Douglas Jemal


          Stanley M. Brand
          Ross Nabatoff
          The Brand Law Group
          923 Fifteenth Street, N.W.
          Washington, D.C. 20005
          (202) 662-9700

          Counsel for Norman Jemal


          Paul Kemp
          Carol Elder Bruce
          Venable LLP
          575 7th Street, N.W.
          Washington, D.C. 20004
          (202) 344-4400

          Counsel for Blake Esherick

Dated:  October 14, 2006

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| _____ | ) | |
| **UNITED STATES,** | ) | |
| | ) | |
| v. | ) | Crim. No.  05-359-1, -2, -3 (RMU) |
| | ) | |
| **DOUGLAS JEMAL, ET AL.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR JUDGMENT OF ACQUITTAL
<u>ON COUNT THREE FOR FAILURE TO ESTABLISH A PROPER MAILING</u>**

The Court should enter a judgment of acquittal on Count Three of the Indictment, charging the Defendants with mail fraud, because the government has failed to prove any mailings made in furtherance of the alleged scheme to defraud, as required under the federal mail fraud statute, 18 U.S.C. § 1341.  Instead, the evidence establishes that the mailings alleged in the Indictment were tangentially related to the alleged scheme and irrelevant to its successful execution.  Such mailings are insufficient to sustain a conviction under the mail fraud statute.

**I.    COUNT THREE**

Count Three of the Indictment alleges that the Defendants engaged in a mail fraud scheme to obtain money and deprive the D.C. government and the citizens of the District of Columbia of the honest services of Michael Lorusso ("Lorusso"), Deputy Director of the District of Columbia's Office of Property Management.  Indictment at 16 (¶ 2).  The alleged "purpose" of the scheme was for the Defendants to provide things of value to Lorusso in order to induce him to take actions to financially benefit the Defendants.  <u>Id.</u> (¶ 3).  Under the "description of the scheme" portion of the charge, Count Three merely incorporates by reference paragraphs fifteen

and sixteen of Count One -- the paragraphs of the Bribery Conspiracy charge alleging the official acts and things of value at issue.  Id. at 16-17 (¶ 4).  Count Three further alleges that "for the purposes of executing" the alleged scheme, the Defendants purportedly mailed or caused to be mailed sixteen items between June 2001 and June 2002.  Id. at 17-19 (¶ 5).

Specifically, the alleged mailings consist of eight American Express credit card statements -- five addressed to Defendant Norman Jemal, two addressed to unnamed employees of Douglas Development Corporation, and one addressed to Defendant Douglas Jemal -- and the eight checks mailed to pay those statements.  Id.  Each of those statements and payments included, among many other items, the credit card charge and subsequent payment of one thing of value allegedly provided to Lorusso as part of the scheme to defraud.  Id.  The mailing of these credit card statements and related payments occurred after Lorusso had already received the associated things of value.

## II.  ARGUMENT

Count Three charges the Defendants with violating the federal mail fraud statute, which provides in relevant part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, . . . <u>for the purpose of executing such scheme or artifice or attempting to do so</u>, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, . . . shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1341 (emphasis added).[1]  The Supreme Court has long held that "[t]he federal mail fraud statute does not purport to reach all frauds, but only those limited instances in which the

---

[1] In addition to schemes to defraud others of tangible property, the mail fraud statute applies to schemes or artifices to defraud that "deprive another of the intangible right of honest services."  18 U.S.C. § 1346.

use of the mails is part of the execution of the fraud, leaving all other cases to be dealt with by appropriate state law." Kann v. United States, 323 U.S. 88, 95 (1944); accord Parr v. United States, 363 U.S. 370, 390 (1960) (only mailings that are part of the execution of the fraud "fall within the ban of the federal mail fraud statute"). Thus, to sustain a conviction, the mailings must be "sufficiently closely related" to the alleged scheme to defraud, United States v. Maze, 414 U.S. 395, 399 (1974), and, at a minimum, be "incident to an essential part of the scheme." Pereira v. United States, 347 U.S. 1, 8 (1954). Mailings related to the continuation of an ongoing scheme can satisfy the "in furtherance" requirement of the federal mail fraud statute. See Schmuck v. United States, 489 U.S. 705 (1989).

### A. To Sustain A Conviction, The Alleged Mailings Must Have Some Bearing On The Ultimate Success Or Continuation Of The Scheme

The mail fraud statute applies only to alleged mailings that have some bearing on the ultimate success or continuation of the fraudulent scheme. For instance, in Parr and Maze, the Supreme Court held that invoices generated by the use of credit cards did not implicate the mail fraud statute because the alleged mailings were insufficiently related to the success of schemes at issue. In Parr, two school district officials fraudulently used a school district credit card to purchase goods and services for themselves, which resulted in three mailings: two credit card statements mailed to the school district and the school district's mailing of a payment in satisfaction of one those invoices. 363 U.S. at 392-93. The Court held that such mailings were immaterial to the success of the scheme because it had reached fruition by the time the mailings occurred. Id. at 393. Likewise, in Maze, where the defendant's fraudulent use of a credit card resulted in invoices being mailed by service providers to the credit card issuer and then by the

issuer to the cardholder, the Court held that such mailings were insufficient because "the success of [defendant's] scheme" did not depend on the mailings. 414 U.S. at 402.

In contrast, the Supreme Court in Schmuck upheld a mail fraud charge in a case involving an ongoing scheme to rollback odometer readings on used cars and sell them at higher prices to retail car dealerships. The alleged mailings were the title applications mailed by the dealers to the state department of transportation on behalf of purchasers of the tampered vehicles. 489 U.S. at 712. The Court held that such mailings were essential to the successful continuation of the scheme because, had title not passed on the tampered vehicles, the defendant might have lost the goodwill of the dealers on whom he depended for repeat business. Id.

The Supreme Court in Schmuck did not overrule Kann, Parr, or Maze. See United States v. Strong, 371 F.3d 225, 229 (5th Cir. 2004) (harmonizing Schmuck with Kann, Parr and Maze). Thus, as the court in Strong stated, the Supreme Court's statement in Schmuck that a mailing need only be "incident to an essential part of the scheme" is:

> cabined by the materiality of the mailing, as well as its timing: A tangential mailing occurring after the success of a fraud scheme is complete would never qualify, even if the mailing is "incidental" to a part of the scheme.

Strong, 371 F.3d at 229. In other words, the relevant mailings must have "somehow contributed to the successful continuation of the scheme." Id. at 230; see also United States v. Gordon, 380 F. Supp. 2d 356, 365 (D. Del. 2005) ("the completion of the scheme or the prevention of its detection must be shown to depend in some way on the mailings in question.").

In this case, the mailings alleged in the Indictment and proven at trial were irrelevant to the success or continuation of the alleged scheme to defraud. The mailings at issue in Count Three consist of eight pairs of credit card statements and corresponding payments sent over the course of approximately one year, from June 22, 2001 through June 27, 2002, each of

-4-

which included one thing of value purchased for Lorusso as part of the alleged bribery and honest services scheme. Indictment at 17-19 (¶ 5). The evidence has established that Lorusso actually received each such thing of value before the mailing of the associated credit card statement and payment.[2] Thus, Lorusso had already received, and had the benefit of, these alleged things of value before the corresponding mailings took place. Since the purpose of the alleged scheme was "to provide things of value" to Lorusso, the Defendants accomplished that alleged goal prior to the mailings at issue. Id. at 16 (¶ 3).

In addition, it was mere happenstance that credit cards were used to purchase the alleged things of value provided to Lorusso. The evidence has established that Douglas and Norman Jemal are individuals of considerable means, who did not need to use credit cards to pay for the types of items allegedly provided to Lorusso. In this regard, the credit card use and associated mailings alleged here are even more remote from the alleged scheme than in Parr and Maze, where credit card use was central to the fraudulent schemes.

The fact that the Defendants could have readily purchased the alleged things of value provided to Lorusso with cash underscores how irrelevant the alleged mailings were to the execution and success of the alleged scheme. The use of credit cards and the related mailings that followed certainly did not have the effect of concealing the alleged fraud or "lull[ing] the

---

[2] For example, Lorusso testified that he received a Rolex watch as a birthday gift from Blake Esherick on August 28, 2001. Tr. 2927-28. The evidence has established that this gift was purchased on Norman Jemal's American Express credit card that same day. GX 65-0067. The credit card statement at issue is dated September 22, 2001, and was necessarily mailed thereafter. The check paying that American Express bill was dated October 4, 2001. GX 62-0096. The check was mailed between that date and October 16, 2001, when it cleared Norman Jemal's bank account. GX 62-0093. Similarly, on May 21, 2002, Douglas Jemal used his American Express card to purchase cowboy boots for Lorusso. GX 60-125. The American Express statement at issue is dated June 19, 2002, and was necessarily mailed thereafter. Id. The check paying that American Express bill was dated June 27, 2002, GX 63-0158, and was necessarily mailed thereafter.

victims into a false sense of security." Maze, 414 U.S. at 403 (distinguishing United States v. Sampson, 371 U.S. 75 (1962)). Rather, using credit cards created additional records of the purchases that, if anything, increased the likelihood that the alleged fraud would be detected and undermined its execution and prospects for success.³ See id.; Compare Strong, 371 F.3d at 230-31 (rejecting mail fraud charges based on routine, intra-agency mailings for recordkeeping purposes triggered by defendant's conduct that made it more likely that the fraud would be discovered); and United States v. Maranite, 44 F.3d 1407, 1413 (9th Cir. 1995) (prospective mailings not in furtherance of scheme to defraud because they would have exposed the fraud and increased the likelihood of defendants' apprehension); with United States v. Wallach, 935 F.2d 445, 465 (2d Cir. 1991) (credit card statements mailed to corporation "were essential to the success" of a scheme to increase director's compensation through fraudulent reimbursements because they preserved the disguise of reimbursed expenses as business-related).

Finally, unlike in Schmuck, the continued success of the scheme alleged in this case did not depend on duping or maintaining the confidence of any third parties. See Strong, 371 F.3d at 229-30 (noting that although scheme involved multiple transactions over several months, it was unlike Schmuck in that it did not rely on "third parties' continuing confidence and good will after each incident of fraud"); United States v. Evans, 148 F.3d 477, 483 n.7 (5th Cir. 1998) (distinguishing Schmuck because scheme to defraud the state of the honest services of parole officer did not depend on a relationship of trust and goodwill between officer and any non-parties). Rather, the scheme's alleged purpose was for the Defendants to provide things of value to Lorusso who, in turn, would take action as a D.C. government official for the

---

³ For much the same reason, the use of credit cards, as opposed to cash, to purchase things of value for Lorusso undercuts the broader allegation that the Defendants engaged in a criminal scheme to defraud to bribe Lorusso in the first instance.

Defendants' benefit.  Indictment at 16 (¶ 3).  To the extent the alleged scheme continued over an extended period, what mattered most to its perpetuation was Lorusso's continued receipt of things of value from the Defendants.  The provision of those things of value in no way depended on the Defendants' use of, or access to, credit cards.  Thus, the credit card statements and payments underpinning Count Three played no role in the successful continuation of the alleged scheme.

    **B.**    **A Mail Fraud Conviction Cannot Be Based On Mailings That Would Have Occurred Irrespective Of The Alleged Scheme To Defraud**

A mail fraud conviction cannot be based on a mailing that would have occurred irrespective of the alleged scheme to defraud.  For instance, in United States v. Cross, 128 F.3d 145, 150-52 (3d Cir. 1997), a case involving court officials convicted of a mail fraud scheme to deprive the citizens of Pennsylvania of their honest services by fixing the results of traffic offense appeals, the alleged mailings were the transmissions of case dispositions to the parties and the department of transportation.  The court reversed the convictions because "the relevant mailings would, of necessity, have been made whether or not the conspiracy existed, and they would have performed precisely the same function in the absence of the conspiracy that they performed during its continuance."  128 F.3d at 151; accord Parr, 363 U.S. at 391 (scheme to embezzle tax revenue earmarked for the school district was not furthered by "legally compelled" mailing of tax assessments to local residents).

    Similarly, the credit card statements and payments that form the basis of Count Three would have been mailed regardless of whether the Defendants purchased the things of value allegedly provided to Lorusso.  Each of the eight credit card statements and corresponding payments included multiple purchases in addition to the thing of value allegedly provided to

Lorusso. For example, the September 22, 2001 American Express statement containing the charge for the Rolex watch contained multiple unrelated additional charges. GX 65-0067--0070. Likewise, the November 1, 2001 American Express statement that included a $1,326.92 charge for Lorusso's car repair contained multiple unrelated additional charges. GX 18-0065--0067. Thus, American Express would have mailed the statements and the Defendants would have mailed payments to American Express irrespective of whether any of the alleged things of value provided to Lorusso were charged to the relevant credit cards. It follows that these mailings cannot sustain the mail fraud charge.

      **C.**    **The Government Has Failed To Prove Any Other Mailings In Furtherance Of Count Three**

Even if the government could rely on mailings not alleged in the Indictment, the government has utterly failed to prove that there were any mailings in this case in furtherance of the scheme to defraud alleged in Count Three. In fact, Lorusso claimed that with respect to the invoices at issue in the case, Douglas Development would typically "send them over by fax or hand-deliver them, <u>so they weren't delivered by the mail</u>." Tr. 3511 (emphasis added). Similarly, the government elicited from Mr. Lorusso that he typically hand-delivered checks to Douglas Development in payment of the invoices at issue. Tr. 2888-89. There is no evidence in the record of any mailings in furtherance of the alleged scheme to defraud.

### III. CONCLUSION

For the foregoing reasons, the Court should enter a judgment of acquittal on Count Three of the Indictment because the government has failed to prove a proper mailing in furtherance of the alleged scheme to defraud.

        Respectfully submitted,

        _____
        Reid H. Weingarten (D.C. Bar #365893)
        Brian M. Heberlig (D.C. Bar #455381)
        Steptoe & Johnson LLP
        1330 Connecticut Avenue, N.W.
        Washington, D.C. 20036-1795
        (202) 429-3000

        Michele A. Roberts
        Jeffrey M. King
        Akin Gump Strauss Hauer & Feld LLP
        1333 New Hampshire Avenue, N.W.
        Washington, D.C. 20036
        (202) 887-4306

        Christopher B. Mead
        London & Mead
        1225 19th Street, N.W.
        Suite 320
        Washington, D.C. 20036
        (202) 331-3334

        Counsel for Douglas Jemal


        Stanley M. Brand
        Ross Nabatoff
        The Brand Law Group
        923 Fifteenth Street, N.W.
        Washington, D.C. 20005
        (202) 662-9700

        Counsel for Norman Jemal

        Paul Kemp
        Carol Elder Bruce
        Venable LLP
        575 7th Street, N.W.
        Washington, D.C. 20004
        (202) 344-4400

        Counsel for Blake Esherick

Dated:  October 14, 2006