UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES ) | |
| ) | |
| v. ) | Crim. No.  05-359-1, -2, -3 (RMU) |
| ) | |
| DOUGLAS JEMAL, *et al.*, ) | |
| ) | |
| Defendants. ) | |

REPLY MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION FOR JUDGMENT OF
ACQUITTAL ON COUNT FIVE OF THE INDICTMENT

The government's opposition reflects a fundamental misunderstanding of the scope of the wire fraud statute. The government appears to believe that the wire fraud statute criminalizes any and all dishonesty, misrepresentations or false statements in private business dealings. In fact, only false statements made with the specific intent to harm the property rights of another -- i.e. misrepresentations intended to obtain money to which the defendant is not entitled -- are covered by the wire fraud statute. See United States v. Stouffer, 986 F.2d 916, 922 (5th Cir. 1993). In its opposition, the government goes to great lengths to establish that the MTD invoice contained misrepresentations and omissions but completely ignores the fact that the record reflects an utter lack of any intent by Defendants to obtain money to which they were not entitled.

The government's entire argument is premised on the dubious claim, based solely on circumstantial evidence, that Defendants used MTD to obtain the commission at issue because Douglas and Norman Jemal needed money in a hurry to purchase 111 Massachusetts Avenue. Government's Opposition ("Opp'n") at 22. The government fails to acknowledge that

this is solely motive evidence that has nothing to do with whether Defendants sought to obtain money to which they were not entitled from Joseph Cayre and Morgan Stanley. The thrust of the government's argument is that Defendants committed "fraud" by obtaining funds through use of the MTD that might have taken longer to obtain had the Defendants submitted the invoice on DDC letterhead. See Opp'n at 61 (contending that had Douglas Jemal submitted the invoice in the name of Douglas Development "he knew that he would have faced a tough fight from Cayre, and that he couldn't have gotten the money in time to purchase the new building"). Even if true, this claim is not fraud at all. The only fair inference from the evidence -- and one the government does not appear to dispute, see Opp'n at 61 ("[t]he MTD invoice was, in one sense, an attempt to avoid a fight") -- is that Defendants used MTD as the vehicle to obtain the commission payment to avoid a fight with Joe Cayre and the associated delay in payment. The government has presented no evidence that Mr. Cayre would not have paid the invoice if it had been submitted on Douglas Development letterhead. Indeed, to the contrary, Mr. Cayre testified that Douglas Development was entitled to the money under his agreement with Douglas Jemal. Tr. 2179-80. Under these circumstances, the government has failed to prove (a) that Defendants intended to defraud Mr. Cayre out of money to which Defendants were not entitled, or (b) that any misstatements in the MTD invoice were material to Mr. Cayre, who indisputably "didn't care where the money went" because it fell within the six percent agreement. Tr. 2180.

With respect to Morgan Stanley, the evidence establishes that the Defendants submitted invoices for Douglas Development fees to Morgan Stanley in the same draw package containing the MTD invoice. See GX 411 (draw package to Morgan Stanley with MTD and Douglas Development invoices). Thus, under no reasonable interpretation of the evidence could the Defendants be deemed to have submitted the MTD invoice because they believed Douglas

Development could not receive payment under the loan. The government has introduced no evidence to support its bald claim that Defendants submitted the MTD invoice because "they were not confident that they could get [money] legitimately under the terms of the loan agreement." Opp'n at 62. To the contrary, the government's own witness, Benjamin Black, testified that nothing in the Morgan Stanley loan agreement prohibited Douglas Development from receiving money, and that the MTD transaction violated no terms of the loan agreement. Tr. 1267-68. The only fair inference from the evidence is that the use of the MTD invoice had nothing whatsoever to do with Morgan Stanley and was based solely on the desire to avoid dispute with Mr. Cayre.

At bottom, expediting a payment to which the payee is otherwise entitled through a "white lie" is not criminal fraud prohibited by the wire fraud statute.

Finally, after five weeks of trial, the sum and substance of the government's evidence in support of its allegation that the Defendants defrauded the IRS in connection with the MTD transaction is: "MTD is an entity with a taxpayer identification number that received $430,000 from Morgan Stanley and yet, according to Ms. Moisa, never bothered to file a tax return showing the receipt of that money." Opp'n at 63. With that flippant sentence, the government counsel would essentially convert every misdemeanor failure to file a tax return into a felony wire fraud charge. To prove its wire fraud allegations, the government must at least prove that taxes were actually owed. See, e.g., Pasquantino v. United States, 544 U.S. 349 (2005). Yet not one of the government's parade of witnesses -- including three different IRS representatives -- ever testified that MTD owed any taxes on this $430,000. Thus, the government seeks to convict these defendants of scheming to defraud the IRS of money or property without a shred of evidence that there was one dime legally due the IRS from MTD. If

government counsel are unwilling to do the right thing and withdraw these unsupported allegations, the Court should do it for them.  This is the purpose of Rule 29.  <u>United States v. Morrow</u>, No. 04-355 (CKK), 2005 U.S. Dist. LEXIS 11753, at *11 (D.D.C. June 13, 2005)("'The trial judge should not allow the case to go to the jury if the evidence is such as to permit the jury to merely conjecture or to speculate as to defendant's guilt.'") (quoting <u>United States v. Bethea</u>, 442 F.2d 790, 792 (D.C. Cir. 1971)).

      For the foregoing reasons, the Court should enter a judgment of acquittal on Count Five of the Indictment.

                                         Respectfully submitted,

                                         /s/ *signature*
                                         Reid H. Weingarten (D.C. Bar #365893)
                                         Brian M. Heberlig (D.C. Bar #455381)
                                         Steptoe & Johnson LLP
                                         1330 Connecticut Avenue, N.W.
                                         Washington, D.C.  20036-1795
                                          (202) 429-3000

                                         Michele A. Roberts
                                         Jeffrey M. King
                                         Akin Gump Strauss Hauer & Feld LLP
                                         1333 New Hampshire Avenue, N.W.
                                         Washington, D.C.  20036
                                         (202) 887-4306

                                         Christopher B. Mead
                                         London & Mead
                                         1225 19th Street, N.W.
                                         Suite 320
                                         Washington, D.C.  20036
                                         (202) 331-3334

                                         Counsel for Douglas Jemal

- 5 -

    Stanley M. Brand
Ross Nabatoff
The Brand Law Group
923 Fifteenth Street, N.W.
Washington, D.C. 20005
(202) 662-9700

Counsel for Norman Jemal

Paul Kemp
Carol Elder Bruce
Venable LLP
575 7th Street, N.W.
Washington, D.C. 20004
(202) 344-4400

Counsel for Blake Esherick

Dated: October 16, 2006

- 5 -